## THOMAS WILLIAMS v. STATE.

No. A-519.  Opinion Filed November 22, 1910.

Rehearing Denied December 22, 1910.

1. **APPEAL—Review—Sufficiency of Evidence—Murder.** (a) When there is evidence in the record from which the jury could legitimately draw the conclusion of guilt, a judgment of conviction will not be set aside upon the ground that the evidence does not support the verdict unless the testimony is such as to snow that the jury was influenced by improper motives in arriving at their verdict.

   (b) For statement of testimony sustaining a verdict for murder, see opinion.

2. **HOMICIDE—Evidence of Other Crimes—Admissibility.** (a) Any fact is admissible in evidence which tends to shed light upon the intention of a defendant in the commission of an act for which he is upon trial, even though it may prove a separate and independent crime.

   (b) It is competent in a case of homicide to put in evi

dence the conduct, actions and general demeanor of a defendant before the killing for the purpose of proving that he was armed and in a vicious humor, provided such conduct is so near the time of the homicide that it tends to show the state of mind of the defendant at the time of the killing.

3.    **TRIAL—Argument of Prosecuting Atty.—Latitude.** (a) A prosecuting attorney has the right to discuss the evidence as he understood it, and from the standpoint of the defendant's guilt; and an erroneous statement of the evidence, if not conceived in a spirit of unfairness or fraud, will not be ground for reversal.

(b) If the jury are in doubt as to what the evidence really was, it is their privilege to have the witness recalled and directed to restate what his testimony was upon the point in dispute, or the court stenographer may read his notes as to what the witness testified.

(c) The prosecuting attorney may state his opinion as to the defendant's ' guilt when he also states that this opinion is based upon the evidence in the case.

(d) To warrant a reversal on account of the argument of the prosecuting attorney, such argument must be grossly improper and unwarranted, upon some material point which injuriously affected the defendant's rights.

(e) If the prosecuting attorney indulges in remarks calculated to improperly influence the jury, after the argument is concluded it is the duty of counsel for the defendant to request the trial court to instruct the jury to disregard such remarks.

(Syllabus by the Court.)

*Appeal from District Court, Muskogee County; John H. King, Judge.*

Defendant was convicted of murder and sentenced to the penitentiary for life, and he appealed. Affirmed.

*W. F. Schuermeyer, Owen & Stone,* and *Bailey & Wyand,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, PRESIDING JUDGE. First. The first assignment of error is that the verdict is contrary to the evidence. The homicide in this case occurred in Muskogee county, near the town of Taft. The defendant was the husband of the deceased. The state's witness, Daisy Barnett, testified that she was at the home of the defendant, and that the defendant and the deceased were

in the kitchen, and that the defendant called Lula Frazier into the kitchen to witness something about Dr. Morris; that while these three parties were in the kitchen the witness heard the defendant say that if he came to town and found it to be true he was going to fix her. The defendant then went into the house and got his pistol and loaded it, and then went to the lot and got his buggy. The deceased was in the house crying. This occurred on Sunday afternoon. The state's witness, Ross Lee, testified that on Monday evening he saw the defendant and the deceased in a buggy coming from Taft; that they were talking, but he could not understand what they said, except that he heard the defendant curse the deceased; that the witness was out hunting for horses; that when he heard the defendant curse the deceased, the witness stopped and looked at them; that he saw the defendant get out of the buggy and step back and fire a pistol; that when he fired the shot the deceased fell out of the buggy; that the witness was about three hundred yards from the place of the shooting.

Anna Banks, a witness for the state, testified that on the evening of the homicide the defendant came to her house. She then testified as follows:

"A. Why, he came to my house and he says: 'Oh, Lordy; oh, Lordy, Mrs. Banks, I have killed my wife: I have killed my wife; ain't that bad?' I said: 'It certainly is.' I says: 'How in the world did you do it?' He says: 'Come and go over, Mrs. Banks, for God's sake come and go over.' I went over and when I got there I found her laying on the gallery. Q. On the porch? A. Yes, sir. Her head was crooked over and one hand kind of crooked under her and the other stretched out. And I goes in the house, and he comes in and he says; 'What a sinful, wretched man I am. Never did I think this time last year I would have killed my wife.' He says: 'Mrs. Banks, Mrs. Banks—' I says, 'Sir?' 'I was making money fast enough; as fast as I would put one dollar in my hand another would come in, but money has brought me to this.' And afterwards Mr. Frazier come in, and he says: 'Brother Frazier, Brother Frazier—tell it, Mrs. Banks, I can't tell it,' and I says: 'He says that he killed his wife-accidentally.' Then afterwards he says: 'I went to shoot at a hawk and the horse jumped,'

—and that part that I don't understand—and he says: "The pistol went off accidentally and killed my wife.'"

Anna Lee, a witness for the state, testified that on the day after the homicide she saw the body of the deceased, and that she was shot in her right temple. Dr. Butler testified that he examined the deceased and found a gun shot wound that entered her right temple and came out at the base of the brain; that he also found a wound on the top of her head; that he found that her skull was cracked or rather opened, which had the appearance of being made by a blow from some sharp or partially sharp instrument.

The defendant testified that the deceased met him with a buggy at Taft as he was returning home from Muskogee. Defendant's account of the shooting was as follows:

"A. And we started on home, and on the way home I seen one of those rabbit hawks, and I went to get out of the buggy to shoot it, and I don't know whether my gun went off as I went to get it out or after I hit the ground, but it went off and shot my wife."

The defendant testified that he carried his pistol in his hip pocket, and that it was a No. 38 Colts automatic. The defendant further testified that he was riding on the left side of his wife and the reason of his doing so was because the springs on the left side of the buggy were stronger than on the right side, and that he got out of the buggy on the left side when he went to shoot the hawk; and that at this time his wife was facing the direction in which they were traveling. It is true that the defendant denied all of the incriminating evidence against him, except the fact of the killing, and claimed that this was accidental. Lula Frazier also denied the testimony of Daisy Barnett. Defendant proved a good character. The jury saw and heard all of the witnesses and were in a much better position to judge of their credibility than we are. Whenever there is evidence in a record from which the jury could legitimately arrive at the conclusion that the defendant is guilty, this court will not set aside the verdict upon the ground of the insufficiency of the testimony, unless the evi-

dence is such as to show that the jury was influenced by improper motives in arriving at their verdict.

If the witness Daisy Barnett is worthy of belief, it is clear that the defendant was jealous of the relations existing between his wife and Dr. Morris. Other testimony in the record shows that Dr. Morris resided at Muskogee and that he was the attending physician of the deceased. If the witness Ross Lee is worthy of belief, the defendant, after cursing his wife, deliberately got out of the buggy, stepped back and shot her with a pistol. The statement of the defendant that he was riding on the left side of the buggy and that, in getting out of the buggy on the left side, he did not know whether the gun was fired as he went to get out of the buggy or after he got on the ground, is very much against the defendant. Even the able counsel for the defendant, in their brief, did not attempt to explain how it would be possible for the defendant to shoot his wife in the right temple, it being the opposite side from him, while he was getting out of the buggy on the left side and when deceased was looking in the direction in which they were traveling. This evidence was strongly persuasive of the fact that defendant's claim that the killing was accidental was a pure fabrication. He either murdered this woman in cold blood or the killing was accidental. We think that the jury was fully warranted in rejecting the theory of accident and of convicting the defendant of murder.

Second. In rebuttal the state placed Ester Richards on the stand, and she testified that on Sunday afternoon before the killing on Monday she saw the defendant down at the Midland Valley depot, and that she saw him with a pistol in his hand, and that she saw him point it at a man there, and that the defendant went on the cars to Muskogee. The state placed Frank Doyle on the stand in rebuttal, and he testified that on the afternoon of the day on which the defendant killed his wife he saw the defendant in the town of Muskogee; that the defendant was drinking; that the defendant pulled out a pistol, and said that it was a good pistol, and that he had the money to back it. The evidence of

both of these witnesses was objected to by the defendant upon the ground that it was incompetent and immaterial. This objection was overruled by the court, and the defendant reserved exceptions to its admission. Counsel for the defendant, in their brief, say:

"There is no rule better settled than that where a person is put on trial for an offense he is to be convicted, if at all, by evidence which shows him guilty of that offense alone; and proof of the commission of some other offense ought to be excluded unless it sheds some light upon the intent with which he committed the alleged offense he is being tried for."

If this statement had omitted the word "alone" following the word "offense," it would have been a clear and correct statement of the law. With this exception, we will now proceed to determine the admissibility of the evidence objected to by the rule furnished by counsel for the defendant. It will be remembered that the state's witness, Lula Frazier, testified to the conversation which occurred in the kitchen of the defendant on the afternoon of the day before the homicide in which the name of Dr. Morris was mentioned, in which the defendant said that if he came to town and found it to be true, he was going to fix her; in which the deceased was crying, and the defendant went out and got a pistol and loaded it. It was also proven that the defendant immediately went to the town of Muskogee. In view of the fact that the defendant killed the deceased while returning home from Muskogee, and that too with the same pistol which he had loaded and with which he had armed himself when he made the threat before going to Muskogee, we are of the opinion that all that was said and done during that time by the defendant tending to throw light upon his mental attitude was competent, especially in rebuttal of the defendant's testimony that he was in an even frame of mind, and that the killing was an accident. Counsel for the defendant contend that this testimony should have been excluded unless it sheds light upon the intent with which the defendant killed his wife; if, on the other hand, it tends to shed light upon the intent with which the defendant killed his wife, then under the rule laid down by counsel for the defendant the evidence was competent and

properly admitted. The defendant had testified that he had gone to Muskogee on Sunday afternoon to see a fire insurance agent to adjust a loss, but could not tell who this agent was. The evidence objected to showed the state of mind of the defendant from the time he left home until he returned and killed his wife, and it thereby tended to throw light upon his intention in killing her. It tended to prove that the mission of the defendant to Muskogee was not one of peaceful business as he claimed, but that he was drinking and armed and was in a reckless and vicious frame of mind and was ready for mischief. This tended to support the theory of the state that the defendant visited Muskogee for the purpose of investigating the relations existing between his wife and the doctor named, and with the intention of killing his wife if he was not satisfied with what he there discovered. We believe that the evidence is reasonably susceptible of this construction, and therefore its admission did shed light upon the intention with which the defendant killed the deceased, and it was properly admitted.

Mr. Wigmore, in vol. 1, sec. 363, lays down what we conceive to be the just and reasonable rule which should govern the admissibility of evidence of this character.

"The *intent* principle receives constant application; for the intent to kill is in homicide practically always in issue; and is to be proved by the prosecution, and the recurrence of other acts of the sort tends to negative inadvertence, defensive purpose, or any other form of innocent intent. For this purpose, therefore, the evidence is receivable irrespective of whether the act charged is itself conceded or not. Where (as usually) it is not conceded, the evidence of intent goes to the jury to be used by them only on the assumption that they find the act to have been done by the accused; it is then to be employed by them in determining the intent. This use of such evidence is universally recognized. As to the similarity of the other acts, no fixed rule can be formulated. They certainly need not have been done to the same person; they need not have accompanied more or less immediately the act charged, and they may have been done even at a subsequent time. The precedents show every variety of circumstances, and a correct application of

4 Cr.—34

the principle would receive any evidence of the sort which conveys any real probative indication of the defendant's intent."

This is sustained by an overwhelming citation of authorities from the American and English courts. We have frequently examined the citations made by Mr. Wigmore and have invariably found them to be entirely reliable. See, also, sec. 3029, vol. 4, Elliott on Evidence, as follows:

"It is held to be competent in a case of homicide to put in evidence the conduct, actions and general behavior of the accused immediately before the killing, in order to show that he was armed and in a vicious humor, even though such testimony discloses another offense. And it has been held that one who met the accused three-quarters of an hour after a murder may testify that he appeared excited."

Mr. Wharton announces the same doctrine. See sec. 31, Wharton's Criminal Evidence, 9th Ed.:

"When an extraneous crime forms part of the *res gestae,* evidence of it is not excluded by the fact that it is extraneous. Thus, on a trial for murder, evidence that the prisoner, on the same day the deceased was killed, and shortly before the killing, shot a third person, was held admissible, under the circumstances of the case, notwithstanding the evidence tended to prove a distinct felony committed by the prisoner: such shooting, and the killing of the deceased, appearing to be connected as parts of one entire transaction. On a trial, also, for breaking into a booking office of a railway station, evidence was admitted that the prisoner had, on the same night, broken into three other booking offices of three other stations on the same railway, the four cases being connected."

In the case of *State v. Smalls,* 73 S. C. 516, we find the following:

"The deceased was shot to death on the public highway. In their appeal the defendants first complain of the admission of evidence to the effect that while walking on the public road on their way to the place where the killing occurred, they were under the influence of liquor and shot off their guns several times; that their conduct was boisterous and threatening toward Jackson Granville, who overtook them a short time before the homicide, and that after the homicide had been committed, still carrying their guns, they went to the home of the deceased. The same point was made in

*State against Miller,* ante, 277, where the facts. were remarkably similar. In that case the court said : 'The general rule is that proof of distinct and independent offenses is not admissible on the trial of a person accused of crime, but there are exceptions to or modifications to this general rule, as where·such evidence reasonably tends to show the malice, intent or motive of the defendant with respect to the crime charged, or where the offense is so closely connected with the crime charged as to bring it within the rule of *res gestae.* Wharton's Crim. Evi. 8th Ed., sec. 30-47. See also a full and elaborate note to *People v. Mollineaux,* 62 L. R. A., 193. The testimony admitted tended to show that the defendants were, a short time before the homicide, approaching the place where it occurred armed with a deadly weapon and with a mind ready for mischief. The conduct, actions and general behavior of the accused immediately before the killing are admissible to show that he was armed and in a vicious humor. 4 Elliott on Evid., sec. 3029.' See, also, *State v. Smith,* 12 Rich., 430 ; *State v. Thrailkill* 71 S. C., 140."

We think that the case of *Kernan v. State,* 65 Md. 259, is conclusive of this question.

"So eminent a legal writer as Roscoe, 7th Ed., page 90, says the notion 'that the evidence in itself discloses another offense makes it inadmissible, is now exploded,' and he cites numerous authorities in support of his position, but, as we said, we do not decide that question. The evidence was clearly not offered or administered for the purpose of showing another offense at or near the time and place of the killing. It cannot be said that it proves any such offense. It was evidently offered to show the movements of the prisoner and his general conduct immediately preceding the offense of which he has been convicted ; to show that he was armed and prepared for mischief, and was seemingly, at that moment, bent on mischief, and in a frame of mind likely to result in mischief. It can not have been offered to show his character for turbulence, and was not admissible for such purpose. A simple act of that kind would not prove that he had that character. But such an act, so soon followed by the killing of a man, did show a reckless and mischievious frame of mind at a period so near the killing as to be admissible ; though the thing itself may not, possibly, be legitimately part of the *res gestae.* We think it was evidence to show he was armed and prepared to kill though it did not of itself show intention to kill the deceased. If it had been offered

to show that he then and there procured the pistol, it would have been clearly admissible, just as much so as if it had been shown he procured it some hours before. He was *then armed with a deadly weapon*—had already prepared himself for the worst, and was recklessly exhibiting it. What was said and done by others, at the same time and in company with him, was only a part of what he was directly connected with, and was inseparably connected with the history of his conduct at the time, and necessary to an intelligent appreciation of his doings. We think the law is correctly extracted from the authorities and summarized in 8th Ed. of Wharton on Evidence, secs. 31-32. It is there laid down that evidence of the character there involved, is admissible for the purpose of showing and 'explaining the movements and general conduct of the prisoner before and after' an offense which immediately preceded the one for which he is being tried. The case of *Regina v. Gardner,* 5 Cox Crim. Cases, 140, notably sustains Mr. Wharton in the statement of the law he makes."

In the case of *Clay v. State,* 40 Tex. Crim. Rep. 593, the court said:

"On a trial for murder, it is admissible, competent and relevant, as tending to show the condition of defendant's mind immediately preceding the homicide, to permit the state to prove that defendant and his brother who was acting with him, were shortly before the difficulty drinking and carousing and manifesting a turbulent and lawless disposition."

In the case of *Vickers v. United States,* 1 Okla. Cr. 452, Judge Doyle, speaking for this court, said:

"Evidence is admissible that tends directly to prove the defendant guilty, although it may also tend to prove a distinct felony and thus prejudice the accused."

We are therefore of the opinion that the court did not err in admitting the evidence objected to.

Third. The case-made contains the following recitals:

"The county attorney in making his closing speech to the jury used the following language, to wit: 'I don't know what you think, or how you value human life, gentlemen of the jury, but I submit to you that if the time has come in this country that a flimsy defense like the one that has been put up in this case, when the defendant takes the stand and is not corroborated upon anything that he says—I say if the time has come when that testimony

and that alone can ring from a jury a verdict of not guilty, then I want to submit that the responsibility is with you and not with me. Mr. Bailey: We object to the county attorney stating the defense is flimsy, and I ask that the court exclude it from the jury, and to instruct the jury not to consider them. Mr. Owen: And stating the defendant's testimony was not corroborated. Mr. Crump: I certainly have got to argue this case. By the Court: Go ahead. Mr. Bailey: We except. Mr. Crump: Now, I want to discuss the testimony for a short time, and I will try not to detain you long, but I say to you frankly that I regard this as a case of the utmost importance. I don't think a more important case has been tried in this country, and I simply want to present to you now the reason, and call your attention to the law they did not call your attention to. Now, I want to rehearse the testimony and I want to show you that under this testimony this defendant is as guilty as was ever arraigned at a bar of justice. Mr. Bailey: I object to that last remark and ask the court to exclude them from the jury, and instruct the jury not to consider them. By the Court: Objection is overruled. Mr. Bailey: Defendants excepts. Mr. Crump: How often did they tell you he was innocent, yet they don't want me to say that I think the testimony shows you he is as guilty a man as was ever brought to a bar of justice. Mr. Bailey: I object again. Mr. Crump: If I don't think he was guilty I wouldn't be standing here. Mr. Owen: We object to that statement, that he would not prosecute if he did not believe he was guilty. Mr. Owen: There is another statement he made that wasn't proper, and we didn't object to it at the time. He says we can go out of the record as often as we want to and that he had no way of correcting it. I think it is the court's duty to keep the attorneys on both sides inside the record. By the Court: I think so too. Now, if there is any reversible error in the county attorney saying what he expects to prove, I don't know it. By the Court: I want to say now, I noticed a while ago, that the statement of the county attorney that the defendant's attorneys could go outside of the record, and he had no way of correcting it, the jury will not consider that part of it. The other objection is overruled. Mr. Owen: We except to the ruling of the court on the other question. Mr. Crump: And I submit to you under the proof in this case that this defendant ought to be convicted in this case, I think, of murder, but, of course, it is for you to say whether you think it should be a lesser crime, but I submit to you

that you could not do otherwise under your oaths, and I submit this to you like David of old, having faith in the righteousness of my cause. Mr. Bailey: I move the court to withdraw the last remarks of the county attorney from the jury, and instruct them not to be governed by them. By the Court: Motion overruled. Mr. Bailey: Defendant excepts."

The objections to the remarks of the county attorney in which he characterized the defense as flimsy and stated that the defendant was not corroborated are not sufficient to work a reversal of this case. The defendant's testimony as to the circumstances of the killing is not only not corroborated, but is directly contradicted by the testimony of Ross Lee and also by the physical facts of the case. The defendant testified that he was riding on the left side of the buggy, and that he got out of the buggy on the left side, and that his wife was facing the direction in which he was going. His statement, therefore, that he shot her accidentally when the bullet struck her in the right temple, is not only flimsy, but is strongly suggestive of the fact that his testimony was a pure fabrication. The county attorney was fully justified in the remarks made. The opinion expressed by the county attorney as to the guilt of the defendant was expressly based upon the testimony. The county attorney certainly had the right to argue the evidence in the case from the standpoint that the defendant was guilty. If he was limited in his argument to the standpoint of the defendant, it would be idle to permit him to address the jury at all. He had the right to discuss the testimony as he understood it; although he may have been in error with reference to the facts proven. An erroneous statement, if not conceived in a spirit of unfairness or fraud, would not be ground for a new trial. To make the argument of the county attorney ground for reversing a judgment it must appear that the remarks indulged in were grossly unwarranted and improper; that they were of a material character and injuriously affected the defendant's rights. It is often the case that counsel honestly differ as to what the testimony was. The jury hear the evidence and they can determine as to who states it correctly. If the jury are in doubt as to what the testimony is, it

is their privilege to have the witness recalled. If there is anything in the argument of the counsel for the state calculated to improperly influence the jury against the defendant, after the argument is concluded it is the privilege and duty of counsel for the defendant to request the court to further instruct the jury with reference thereto. This right is expressly given by statute. The 6th paragraph of sec. 6823 of Snyder's Comp. Laws of Okla. 1909 is as follows:

"When the arguments are concluded, if the court be of the opinion that the jury might be misled by the arguments of counsel, he may to prevent the same further instruct the jury."

We are sustained in these views by the great weight of authority. In the case of *Johnson v. State*, 53 S. W. 105, the Court of Criminal Appeals of Texas said: ,

"Bill No. 2 was reserved also to the argument of the state's counsel, in which he stated that the theory of appellant's guilt was upheld by the testimony of some of the best citizens of Upshur county, and proceeded to quote the testimony of the witnesses Mougham, Davis and Littlepage. The evidence of these witnesses was not stated in the bill of exceptions, nor does it show that their testimony was in any way impeached. It is but a natural inference, in the absence of impeachment, that the witnesses are of good character, and we see no particular objection to the statement of the district attorney."

In the case of *Fertig v. State*, 100 Wis. 307, the Supreme Court of Wisconsin said:

"The prosecuting attorney was permitted to say, in closing the case to the jury, replying to remarks of the attorney for the accused regarding the testimony of William Spaulding: 'What would counsel have him do? Come here and shower bouquets on the assassin of his brother? Crown him with a wreath of laurels?' And also permitting the district attorney to say, in substance, that there was murder in the heart of the accused as he proceeded to and effected the homicide,—that he had murder in his heart, in his eye, and in his brain; that he stood where the tracks indicated to get a good aim; the object of his vengeance was coming, sitting on the wood in full view; he (the accused) was a crack shot and knew it; he cocked his gun, drew the bead on the deceased, and the deed was done, and a son and brother was sent to his Maker

without a moment's warning, by the act of an assassin,—as vile an act as ever happened on earth; so foul that it would be worthy of the vicegerent of the monarch of hell.' That such language, with the earnestness with which we may well assume the words were uttered in the closing moments of an important trial, was highly calculated to carry the jury along the line of thought which it indicated; that is, that the accused was guilty, cannot be doubted; but whether it was outside the case, or tended unfairly to influence the jury, and to swerve them from the duty of deciding the case on the evidence, and that alone, in the light of the law governing the subject, is quite another question. So long as counsel did not depart from the evidence produced, but confined his argument to reasoning from that up to the conclusion that it established guilt, however eloquently and persuasively he may have handled his subject, it was not only legitimate, but commendable. Within the record in this regard, the field is broad, and the licenses of the advocate, and duty as well, permits him to say with the utmost freedom what the evidence tends to prove, and that it convinces him, and should convince the jurors as well, of the fact in issue. As said in *People v. Hess,* 85 Mich. 128: 'To deny to a prosecuting officer that privilege, would be to deny him the right to place before the jury the logic of the testimony which leads his mind to the inevitable conclusion of guilt, and which he has a right to presume will lead them to the same conclusion if they view it as he does.' That does not mean that a prosecuting officer may express his opinion independent of the evidence that the accused is guilty, or his opinion of guilt, which may or may not be based on the evidence, but that he may state from the record, upon which the issue is to be submitted to the jury, that it established guilt. To do the latter is but to state the evidence, draw inferences therefrom, and proceed, reasoning naturally from step to step up to the logical conclusion, and state it, all being legitimate parts of legitimate argument; and if the introduction and discussion lead to such conclusion, though stated with great earnestness and with strong feeling and conviction, so long as the advocate keeps within the record, the accused has no legitimate ground of complaint. That appears to be what was done in this case. There is nothing to indicate that the district attorney asserted that the accused was a murderer or assassin, except with reference to the offense for which he was being tried, and as he drew that conclusion from the evidence. It was the inevitable conclusion of the line of argument

pursued by the prosecutor, from the evidence, and could not have been otherwise understood by the jury. It is quite unlike *Scott v. State,* 91 Wis. 552, where the district attorney spoke of the accused as a thief, not with reference to the offense for which he was on trial, but as a fact tending to establish guilt of that offense.

"As to remarks made in reply to those of the attorney for plaintiff in error, regarding William Spaulding, it is sufficient to say that in using the term 'assassin' it is quite clear that the district attorney was speaking from the evidence in the case as he viewed it, and that the jury must have so understood him. He had a right to assume that the evidence produced on the part of the state was true, and that it established what it tended to establish, and that it pointed most strongly to the guilt of the accused as charged. To address the jury accordingly can hardly be said to have been an abuse of the privilege of counsel for the state, and so prejudicial to the accused, as to warrant a reversal of the judgment. True, harsh and violent language should not be used by counsel, certainly in criminal prosecutions, though whether language be harsh and abusive depends largely upon the evidence in the case; but in the absence of some manifest abuse of the privilege of legitimate argument, clearly working prejudice to the accused, it cannot be considered reversible error. In *Spann v. People,* 137 Ill. 538, where the evidence on the part of the state established the guilt of the accused, the court held that, assuming the truthfulness of the people's evidence, which assumption the prosecuting attorney had a right to make on the argument, it was not such an abuse of the privilege of counsel in argument to the jury, to speak of the accused, with reference to the offense for which they were on trial as robbers and burglars, as to work a reversal on that ground. So we may say it was not an abuse of the rules of legitimate argument, in this case, to speak of the accused, from the evidence of the state, as a murderer."

In the case of *People v. Welch,* 80 Mich. 618, the Supreme Court of Michigan said:

"The counsel for the people, Mr. E. F. Conely, then addressed the jury, and in the course of his argument, in commenting on the duty of a prosecuting officer said: 'I stand here representing the people of this state, of whom the defendant is one. I do not believe in partisanship in the trial of a criminal cause, nor in the exhibition of passion or feeling. It should have no place here. If I were capable of scattering among you flowers of eloquence with

never so lavish a hand, I should not do it. It may seem extreme, but as I felt that the defendant should not be convicted of any offense greater than manslaughter, and with my associate have so advised the court, and asked an instruction to that effect, so, if I believed the defendant was not guilty of the crime of manslaughter, or if I had a reasonable doubt of his guilt of that offense, I would not stand before you, and ask you to convict him.'

"Defendant's counsel excepted to these remarks. In the further course of his argument, Mr. Conely said: 'Now, let us see what kind of a man the defendant is. He had taken the stand in his own behalf, and has admitted that he had been arrested a number of times for assault and battery, and has been convicted of breaking and entering a freight car in the day-time with intent to steal, upon which conviction sentence was suspended, and he tells you that he was a pugilist, and on that day he left a challenge to fight one Ryan. Now, that is the kind of a man that started out that morning; that is the kind of a man you have before you today:—

"To which remarks defendant's counsel excepted. * * * It is not claimed in this case that Mr. Coneley represented any private interest, or that he stood in any other capacity than as the representative of public justice. As such representative, it was his duty, if he believed the defendant guilty under the testimony, to use all fair and honorable means to secure his conviction. The defendant was represented by able counsel, and in such case the prosecuting attorney was not bound to stand aloof or indifferent, and, while he ought not to act in a partisan spirit, he should see to it that law-breakers should not go unwhipped of justice. It is not easy to conceive of a case where the testimony adduced tends strongly to show the guilt of the accused, that, in course of a proper argument, the jury will not become possessed of the opinion or belief that the prosecutor believes the accused guilty of the crime charged. * * * The record returned here shows testimony which, if believed, could leave no reasonable doubt of the guilt of the accused. It does not strike us that the remark could or did have any prejudicial influence with the jury, and no request was made to the court to guard the jury against such influence. We therefore overrule this exception."

In the case of *Mathews v. State,* 41 Texas Crim. Rep. 100, the Court of Criminal Appeals of Texas said:

"His fourth bill complains of the closing argument of Jas.

W. Swayne, county attorney, in the following language: 'The evidence in this case, beyond question, shows that this defendant is the thief, and society is entitled at your hands to protection from all thieves and violators of the law,'—to which appellant objected 'as calculated to injure his rights with the jury, and to induce them to think that they ought to convict this particular defendant to please society; and defendant asked the court to stop the attorney, and instruct the jury not to regard the same.' The court refused to do so, and appellant excepted. We do not think there is any error in the remarks of the county attorney. Furthermore, we have held it is the duty of appellant to present a written charge instructing the jury to disregard such remarks. This was not done. *Wilson v. State,* 32 Texas Crim. Rep. 22; *Norris v. State,* 32 Texas Crim. Rep. 172; *Rahm v. State,* 30 Texas Crim. App. 310; *House v. State,* 19 Texas Crim. App. 227. In bill number 6, appellant complains of the following: 'The county attorney in his closing argument to the jury, stated "that it was very strange that the defendant didn't bring some one here to prove something against the character of Jim Keys when Jim Keys had testified in this case on a former trial thereof;" to which argument of the county attorney defendant objected on the ground that it was a reference to a former trial of this case,' etc. The court explains the bill as follows: 'Said statement was brought out by defendant's cross-examination of witness Keys, that he had testified herein before on a former trial, and, the defendant having put in evidence to impeach Keys, the state introduced a number of witnesses showing that the general reputation of Keys for truth and veracity was good in the community where he lived; and the defendant in discussing the evidence, made a vigorous attack upon witness Key's testimony, and it was in reply to what defendant's attorney had said that the county attorney made the remark complained of. Defendant had proved the fact of former trial. We think the explanation of the court attached to this bill renders the remarks of the county attorney harmless. It appears that state's counsel had been provoked into making the remark by the action of appellant's counsel. We have held heretofore that, where counsel for the state has been provoked to comment upon the failure of the defendant to testify by the action of defendant's counsel, we would not reverse the judgment on this account. *Parker v. State,* 39 Texas Crim. Rep. 262; *Pierson v. State,* 21 Texas Crim. App. 14; *Smith v. State,* 21 Texas Crim. App. 227. The evidence sup-

ports the verdict, and, no error appearing in the record, the judgment is in all things affirmed."

In the case of *State v. Mallon,* 75 Mo. 357, the Supreme Court of Missouri said:

"We have noticed all the alleged errors except that in relation to alleged misconduct of the prosecuting attorney. The following statement in his address to the jury is complained of: 'Their theory is that a soberer man than Mallon or Brown got the money, but you are not to guess at this matter. There is no evidence that the money was lost, or that any one got it but Mallon.' This was but his opinion of what the evidence proved, and there was no impropriety in expressing that opinion, however erroneous it may have been. No verdict in a case contested before a jury could stand, if on such grounds, this court should hold that their verdict should be set aside. What the attorneys of the respective parties to a litigation labor to demonstrate to a jury, is that the evidence established the facts on which they respectively rely for a verdict. This is legitimate."

In the case of *People v. Barnhart,* 59 Cal. 402, the Supreme Court of California said:

"At the trial in the court below the district attorney, in his opening argument to the jury, stated that the witness Brown testified that defendant, shortly after his arrest, requested him to ask the prosecuting attorney, Badger, to come and see him, and that Badger testified that during such visits the defendant said, 'I would not have taken the horse if I had not been drunk'—from which the district attorney proceeded to argue an inference of guilt, whereupon the defendant's counsel objected to such action on the ground that no such testimony was given in the case. The prosecuting attorney insisted that such was substantially the testimony as given. Counsel for defendant asked that the reporter's notes be read. The court stated to counsel that its recollection of the testimony, in that regard, accorded substantially with that of the prosecuting attorney, but that the jury were the sole judges of what the testimony, if any, in that respect, was, and directed the prosecuting attorney to proceed, suggesting that in the meantime the reporter could look over his notes, and if it was found the prosecuting attorney was mistaken, the mistake could be corrected at any time before the argument closed. The prosecuting attorney, after stating that he thought he was correct in the matter, pro-

ceeded to address the jury, but no further in relation to the matter in question—to all of which the defendant's counsel reserved an exception, without asking to put before the jury the result of the reporter's investigation of his notes. We see no merit in the exception. An erroneous statement of the testimony to a jury by counsel in the trial of a cause is not an error for which a new trial will be awarded. It would be strange if it was. It often occurs that counsel do not agree as to what the testimony is. Indeed, it rarely happens that they do. It is for the jury to determine that question, and so the court told the jury in this case, at the same time affording defendant the opportunity, of which he did not avail himself, to show from the reporter's notes just what the testimony was."

In the case of *Keesier v. State,* 154 Ind. 248, the Supreme Court of Indiana said:

"In the course of the argument, the prosecuting attorney used this language: 'When the defendant came around the back part of his buggy, and drew his revolver from his pocket, Hall slid off the sled, and started to run; and it was well for him that he run, when you consider the character of the defendant as shown by the evidence.' This statement was objected to by counsel for appellant, who asked that it be withdrawn from the jury, and the jury instructed to disregard it. The court overruled the objection and motion, with the remark, 'I don't think the argument improper.' Appellant, thereupon, excepted, and moved that the jury be discharged. His motion was overruled, and he now complains of the action of the court as error. Evidence had been introduced impeaching the character of the appellant as a witness, and counsel seem to think the allusion of the prosecutor was to this testimony, and that such misconduct ought to reverse the judgment. If the reference was to the impeaching evidence, such reference was improper and illogical, but we cannot say that it would be ground for reversal. *Morrison v. State,* 76 Ind. 335. We think, however, that the allusion was not to the impeaching testimony, but to the evidence of the actions and behavior of the appellant at the time of the collision on the highway. A natural inference from his conduct at that time was that he was unreasonable, overbearing, violent, and reckless of human life. The word 'character' was, perhaps, inaccurately used where 'disposition' was evidently meant. The ruling of the court upon the questions presented were correct. *Shular v. State,* 105 Ind. 289, 55 Am. Rep. 211."

In the case of *Beasley v. State,* 84 Ia. 87, the Supreme Court of Iowa said:

"Another ground for new trial was misconduct of counsel for the state in the argument of the case. It is complained that they misstated the evidence, and that they expressed themselves as convinced beyond a reasonable doubt that the defendant was guilty. It is very common for opposing counsel to differ as to what the testimony was, and each should be permitted to maintain his claim before the jury whose province it is to determine what evidence has been submitted. It is also permissible that counsel may emphasize their claim from the evidence by stating the conclusion to which it leads their minds. Where an accused is defended by able counsel as in this case, the public prosecutor is understood as standing against the accused; and we think it is not true, as argued, that assertions by him of the conclusions which he forms from the testimony would be, in great part, as prejudicial to defendant as like utterances from the judge on the bench. We fail to discover anything unusual or out of order in the conduct of counsel for the state that could have been in the least prejudicial to the defendant."

We could fill a volume of quotations to the same effect from both American and English reports, but deem these sufficient. We find no error in the record, and the judgment of the lower court is therefore affirmed.

DOYLE and RICHARDSON, JUDGES, concur.