## HAPPY ANDERSON *et al.* v. STATE.

No. A-2699.   Opinion Filed April 9, 1917.

(164 Pac. 128.)

**HOMICIDE—Instructions—Applicability to Case.** In a criminal case instructions to a jury must be applicable to the case. The law applicable is determined by the accusation and the evidence introduced upon the trial, and on a trial for assault with intent to kill, where the evidence tends to show justification in self-defense, it is the duty of the court to submit instructions properly embracing the law of self-defense.

*Appeal from District Court, Johnston County;*
*J. H. Linebaugh, Judge.*

Happy Anderson and Babe Anderson were convicted of assault with intent to kill, and they appeal. Reversed.

*Cornelius Hardy,* for plaintiffs in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J. Happy Anderson and Babe Anderson were jointly charged, tried, and convicted of the crime of assault with a dangerous weapon with intent to kill, and their punishment fixed at imprisonment in the penitentiary for three years. From the judgments rendered in pursuance of the verdict they appealed by filing in this court, on April 10, 1916, a petition in error with case-made. The Attorney General has filed the following confession of error:

"In this case we feel impelled to confess error, though we regret to have to do so. But before we get to the confession we wish to say that we fail to find so many errors in the record as defendants allege. We have read it through carefully and digested every syllable. It was an ugly family row. The two Andersons, the defendants herein, were brothers, and their father and

sister were in part mixed up in this trouble that originated through family gossip. Happy and Babe had a row with one Sam Toons, and Sam and Happy were brothers-in-law, each having married a girl by the name of Coffee, and these two were sisters. They all lived on almost adjoining lots and blocks in the same little town of Ravia. Sam Toons, the victim, had heard that the Andersons were snubbing his wife; in fact, she told him so. He went to them and told them they must stop it, and this originated the fuss in which the two Anderson boys, on the night of May 3d, after dark, met up with Sam alone, coming from town, and a fight was had. These two defendants, the Anderson boys, admit that a heavy and dangerous piece of iron was used by Happy Anderson in beating Sam, but claimed that they took it away from Sam before they used it. Sam came out of the fray with a knot on the back of his neck with a gash in it, a bruise in the side over his heart, a lick over the eye, one ear marked, and the other one nearly off, and the question is, as the three were together alone at the starting of the fight, as to who struck first.

"The defendants attempt to assail the character of Sam's wife, and introduced two witnesses for that purpose, but in asking the question as to whether or not her character was good on the subject of peace and quietude, or truth and veracity, they do not put the question in the usual and authorized form, but ask if the witness was acquainted with her character for truth and morality, and especially for morality. The attorney who did this was doubtless a practitioner in the eastern part of the state, the Indian Territory part, where the laws of Arkansas were in force. The question authorized by the statute of that state is set out in Mansfield's Digest of the Laws of Arkansas, sec. 2902, and has been construed more than one time by the courts of that state. The words used in that statute are 'truth and immorality.' See said section; *Majors v. State,* 29 Ark. 112; *Lawson v. State,* 32 Ark. 222.

"A certain district judge in this state, the exact question to be asked under the circumstances not having been fully set forth, permitted the question asked as to the truth and immorality of a witness in the case of *Litchfield v. State,* 8 Okla. Cr. 177, 126 Pac. 707, 45 L. R. A. (N. S.) 153, and there this court very promptly ruled that that was a mixture of the truth and other elements of the moral character of a witness, and could not be answered. The Supreme Court of Oklahoma Territory had noticed this question in *Flohr v. Territory,* 14 Okla. 499, 78 Pac. 565, but, as this judge thought, had not permanently settled it.

"Though this is a mixed question, by the authorities we think that it is now settled in this state, and we refer to the authorities above and to *Kansas Taylor v. Clendening,* 4 Kan. 532; 40 Cyc. 2495; 33 A. & E. 1075; 5 A. & E. 587. So we think there is nothing to this exception.

"This court has passed on the question repeatedly where the inquiry was as to the character of the defendant. See *Cannon v. Territory,* 1 Okla. Cr. 607, 99 Pac. 622; *Morris v. Territory,* 1 Okla. Cr. 643, 99 Pac. 760, 101 Pac. 111; *Dickinson v. State,* 3 Okla. Cr. 158, 104 Pac. 923; *Friel v. State,* 6 Okla. Cr. 533, 119 Pac. 1124; *Edmonds v. State,* 9 Okla. Cr. 618, 132 Pac. 923; *Gilbert v. State,* 8 Okla. Cr. 548, 128 Pac. 1100, 129 Pac. 671. But this has no reference to a witness.

"We notice another objection as we go along, thinking it may possibly arise at the next trial, and that is that the court charged on flight. There is no error in this. See 12 Cyc. 610; *People v. Flannelly,* 128 Cal. 83, 60 Pac. 670; *Cleavinger v. State,* 43 Tex. Cr. R. 273, 65 S. W. 89.

"We notice another objection, and that is the speech that was made by the prosecuting attorney. This was in accord with the law. The prosecuting attorney had the right to argue that case from the standpoint of the state. Sam Toons appears to have been doing what any other man of self-respecting character would have done—de-

fending the character of his wife. The Andersons had been maligning her. Old man Anderson, the father, had told Sam in her presence that 'she would work him into trouble.' Babe relates a conversation that the two Anderson boys had with Sam just preceding the fight, and which occasioned the fight, and that is that Happy told Sam when Sam had told him he must quit talking about Sam's wife, this: 'Haven't you seen enough, and don't you know enough to know that you have got no wife?' Happy himself confirms this. Now Sam's wife was the sister of Happy's wife. Happy claims that he caught her in some sort of attempted assignation in the night with a man by the name of Faulkner, but it is strange in all this record that Happy is the only man that ever saw aught wrong with her, and she says that Happy himself ruined her sister while at her own house, and that it was four months before she could get Happy to marry the girl after the baby was born. All this comes out in the evidence, and the attorney for the state has a right to discuss it. See *Williams v. State,* 4 Okla. Cr. 534, 114 Pac. 1114; *Morgan v. State,* 9 Okla. Cr. 26, 130 Pac. 522; *Thacker v. State,* 3 Okla. Cr. 489, 106 Pac. 986.

"In defense of Sam we say that there is nothing to show that he knew of this alleged adventure of Happy in catching Sam's wife and Faulkner at the door of the old house in the night. We are not pretending to defend the character of Sam's wife, but Sam had the right to do so. They had a family of children, and while we do not think that Sam had the magnanimous character of the philosopher Cato, who is said to have lent his wife to his friend, Hortensius, yet he was just an ordinary man, an ordinary husband, who seemed to know nothing against his wife, and to have had affection for her and trust in her, and a husband like this may sometimes be the blindest of human beings. In fact, we see nothing to censure in Sam. He did right in fighting for his wife among this family of slanderers, and the county attorney had the right to discuss it.

"But we get now down to the proposition where there is real error, as we think. We say again, we hate to make this confession, because these defendants should have been convicted. The evidence in the case was in sharp conflict as to who brought on the difficulty. Sam says the Andersons brought it on and turned back and struck him from behind. The Andersons say that Sam brought it on by first trying to strike them with a piece of iron concealed in his hand.

"The court in charging the jury (see instruction 3), tells them that the defendant admits making an assault on Sam Toons; he does not say the first assault, and leaves the jury in confusion. The defendants deny that they made any first assault on Sam; but in his statement to the jury the court assumes that they brought on the difficulty. This, we think, was error. See Kelly's Cr. Pro. sec. 394; Clark's Cr. Pro. 468; 12 Cyc. 602. In making this statement to the jury, and this proposition is referred to nowhere else, the court ignored the theory of the defendants that Sam was himself the aggressor. This should not have been done. See 11 Pl. & Pr. 191; Clark's Pro. 470; *Douglas v. Territory,* 1 Okla. Cr. 589, 98 Pac. 1023; *Gray v. State,* 7 Okla. Cr. 104, 122 Pac. 265.

"The theory of the defendants was that of self-defense; but the court gave no charge to that effect. We agree with the court below and with the witnesses and with the jury that there is little or nothing in this framed up contention of the defendants under the proof. But it was their theory of the case, however futile, and to ignore it has been time and again held as error by this court. See the recent case of *McClatchey v. State,* 12 Okla. 173, 152 Pac. 1136, and other cases of similar character.

"Before leaving the case we must refer to the hip pocket movement alleged to have been seen by the defendants and their father at different times. As a fact, on the night of the fight, Sam was in his shirt sleeves, and he avers that he had no pistol nor even a pocket knife,

and there is not a line in this record to show that he ever had had a pistol, and he swears that he never owned one.

"This was a pretty brutal, dirty affair. The jury arrived at the right conclusion, but we think that these defendants were entitled to the charges before indicated in this confession, and that their failure to get them was error.

"However guilty a defendant may be, he must be convicted according to law. So we confess error herein."

A careful examination of the record leads to the conclusion that the confession of error is well founded. It is apparent that the court failed to instruct the jury upon the issue of self-defense relied upon as a justification for the assault charged.

We also think that the verdict was not warranted by the evidence. The defendants testified that Toons, the prosecuting witness, was the aggressor, but, discarding entirely the theory of self-defense, the evidence, at most, sustains only the conclusion that the assault was with intent to do bodily harm. The information was not questioned in the lower court. However, we deem it necessary to say that it is demurrable. It attempts to charge the common-law crime of assault with intent to murder. The case was tried and the instructions of the court were based upon the statutory crime of assault with intent to kill.

Because of the error in the charge of the court and the error in refusing to give the requested instructions on the law of self-defense, the judgment is reversed, and the cause is remanded.

ARMSTRONG and BRETT, JJ., concur.