**Mario SAM, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16010.**

Court of Criminal Appeals of Oklahoma.

Aug. 9, 1972.

Milton Keen and Max Moulton, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Raymond Naifeh, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Mario Sam, hereinafter referred to as defendant, was convicted in the District Court of Pittsburg County, Case No. CRF 70-37, of possession of marihuana, (63 O.S. § 451), after former conviction of a felony, (21 O.S. § 51), and sentenced to thirty-five (35) years imprisonment. Judgment and sentence was imposed on March 12, 1970, and this appeal perfected therefrom.

It was charged by information that on February 5, 1970, the defendant, Gilbert Grigsby, Roger Medley, and Dickie Stowers, while acting conjointly, did unlawfully have in their possession marihuana. The defendant, age 21, was granted a severance and tried as a habitual felony offender under 21 O.S.1971, § 51 by virtue of his former conviction on a plea of guilty at the age of seventeen (17) to the charge of grand larceny. Essentially the evidence established that on February 5, 1970, a McAlester policeman and a Hartshorne policeman, stopped and searched a vehicle in Hartshorne, Pittsburg County, occupied by defendant and his co-defendants, and discovered a quantity of what was identified as marihuana.

We consider here defendant's contentions that the trial court erred in denying a motion to suppress because of an unlawful search, and that the trial court erroneously instructed the jury that marihuana was a narcotic drug.

## I.

On the morning of February 5, 1970, Officer Hendricks, a McAlester city policeman assigned as a non-uniformed drugs officer, saw defendant enter a house in McAlester, apparently occupied by co-defendant Grigsby. Officer Hendricks had had the defendants "under surveillance for thirteen days." While the officer watched the house, defendant emerged and re-entered the house several times, once with a plastic bag about the size of a softball and once with a flour sifter. When defendant Sam and Grigsby left by automobile, Officer Hendricks pursued them in an unmarked car. However, the officer lost contact with them in the traffic.

Sometime later that morning, Officer Hendricks drove to Hartshorne, a neighboring city. While driving around Hartshorne, Officer Hendricks saw defendant, Grigsby, Stowers and Medley at the "Y" Drive-In, playing a pin-ball machine. Officer Hendricks then saw a marked Hartshorne Police car parked across the street from the drive-in. Hendricks went over to the police car and talked with its occupant, Hartshorne Policeman Day. Hendricks got into the police car and the two officers drove away while Hendricks explained to Officer Day that he was watching the boys at the drive-in and suspected they had marihuana in their automobile, a "bluish" Volkswagon station wagon parked in front of the drive-in. In this connection Officer Hendricks testified he asked Officer Day for assistance. Officer Day "agreed to help him." As to the Volkswagon, Officer Day testified that he and Hendricks "talked about stopping the vehicle." This talk about stopping the Volkswagon occurred while the two officers were driving around the block and while the Volkswagon was parked in front of the drive-in. Officer Day testified that up to that point he had observed no violation of the law. Officer Hendricks testified he was "going to try to sometime make an arrest" and that he had "the intent to search that automobile." Although he did not know for a fact the defendants had any marihuana, Hendricks stated he suspicioned they did.

As Officers Day and Hendricks drove back to the front of the drive-in, the four boys got into the Volkswagon and "took off a little faster than the usual driver would." Officer Day, still driving the marked Hartshorne police car, allowed Officer Hendricks to get out of the car and then gave chase to the Volkswagon. Officer Hendricks got into his automobile and followed Officer Day's car. Officer Day testified he overcame the Volkswagon within three blocks and that he was traveling between 50 and 55 mph in a 40 mph zone. According to Officer Day the Volkswagon was going "faster than the usual driver drives." Officer Hendricks did not know how fast the Volkswagon was going or if it was speeding. Officer Day motioned the Volkswagon over to the curb with his hand and horn and without turning on his siren or red light.

When the Volkswagon stopped, Officer Day pulled in behind it, got out of his vehicle, and approached the driver's side. Officer Day talked to the driver about speeding and asked for his driver's license. Officer Hendricks pulled in behind Day's car, got out of his car, and approached the passenger side of the Volkswagon. Officer Hendricks testified that when he came up to the Volkswagon he "wasn't watching" Officer Day and "wasn't paying any attention" to what Officer Day was doing. Officer Hendricks "looked through the car there," looking in the back seat and front seat where he found on the right front floor board a "wax paper" package or "little plastic bag." Without picking up the sack or examining it, Officer Hendricks "reached into the glove compartment" and pulled out a penny box of matches." Hendricks said he "slid it open" and "looked inside the match box and I could see this green stuff, it smelled like alfalfa to me." Hendricks testified he could not tell alfalfa from marihuana. Officer Hendricks took four other match boxes containing the same substance from the glove compartment, after which he

picked up the small package from the floor board. The four boys in the Volkswagon, Sam, Grigsby, Stowers, and Medley, were then taken into custody by Hendricks. Afterwards, another package was recovered from under the dash of the Volkswagon, and another from the boot of Grigsby. A chemist testified that the substance in the packages and match boxes was marihuana. Officer Day did not see the packages and boxes until after Officer Hendricks removed them from the Volkswagon. The State asserts the warrantless search was justified as incident to arrest for speeding.

■ A warrantless search is "per se unreasonable under the Fourth Amendment," and the State has the burden to prove a warrantless search is lawful as falling within one of the "few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, at 357, 88 S.Ct. 507, at 514, 19 L.Ed.2d 576 (1967). Trupiano v. United States, 334 U.S. 699, at 705, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). Lawson v. State, Okl.Cr., 484 P.2d 1337, at 1339 (1971). Although search incident to arrest is one of those exceptions, "search and seizure as an incident to a lawful arrest may not be used as a pretext to search for evidence." Handley v. State, Okl. Cr., 430 P.2d 830, at 831 (1967). "To justify the search of a person and immediate surroundings of the person arrested, the arrest must be done in good faith and not as an excuse or subterfuge for search otherwise unlawful." Smith v. State, 52 Okl.Cr. 315, 4 P.2d 1076 (1931). In a long line of cases this Court has held that where an officer operating on mere suspicion makes a traffic arrest as a subterfuge or pretext to search, such a search is unreasonable and its fruits inadmissible.[1]

In Johnson v. State, 92 Okl.Cr. 63, 220 P.2d 469 (1950), a patrolman justified stopping defendant's automobile for driving across the highway center line. After lecturing the driver and giving him a citation, the patrolman saw a box of bottles containing whiskey in the automobile. This Court reversed the resulting conviction for illegal transportation of whiskey, holding that the arrest was a mere pretext to search the vehicle. This Court stated:

"It is apparent to us, based on the evidence and the reasonable inferences to be drawn therefrom, that the officers were suspicious that defendant was transporting intoxicating liquor in his automobile. They started following it with the intent to investigate and search the car because of their suspicion. . . . The fact that defendant might have crossed the center line of the highway a few inches during this drive was merely used as a subterfuge by the officers to cover up their determination to search defendant's car." 220 P.2d at 472.

In Barnett v. State, 94 Okl.Cr. 293, 235 P.2d 555 (1951), the defendant's conviction for transporting intoxicating liquor was reversed because of an unlawful search of defendant's automobile stopped for a traffic violation. The court concluded that the officer's "suspicions become aroused because of the looks of [defendant's] truck and that they determined to investigate it. They had no warrant, and no crime was committed in their presence to justify the arrest of the defendant without a warrant. The alleged reckless driving was merely used as a subterfuge by the officers to cover up their determination to investigate the contents of the truck." 235 P.2d at 558.

---

[1]. A representative few are: Bowen v. State, 50 Okl.Cr. 36, 295 P. 623 (1931); Lamb v. State, 59 Okl.Cr. 360, 60 P.2d 219 (1936); Tucker v. State, 62 Okl.Cr. 406, 71 P.2d 1092 (1937); Bowdry v. State, 64 Okl.Cr. 86, 77 P.2d 753 (1938); Hoppes v. State, 70 Okl.Cr. 179, 105 P.2d 433 (1940); Jones v. State, 82 Okl.Cr. 91, 166 P.2d 443 (1946); Jones v. State, 88 Okl.Cr. 243, 202 P.2d 228 (1949); Thompson v. State, Okl.Cr., 444 P.2d 849 (1968); Fields v. State, Okl.Cr., 463 P.2d 1000 (1970); Roberts v. State, Okl. Cr., 483 P.2d 338 (1971); Thompson v. State, Okl.Cr., 487 P.2d 737 (1971); Watt v. State, Okl.Cr., 487 P.2d 961 (1971).

In Holland v. State, 93 Okl.Cr. 180, 226 P.2d 448 (1951), the officers stopped a truck occupied by the co-defendants, Holland and Baker, for a reckless driving violation and discovered intoxicating liquor. Their conviction was reversed because: "The officers had known for several days they wanted to search this truck and had made no effort to procure a search warrant and we are firmly convinced that the claim of reckless driving was purely a pretense and subterfuge for concealment of the real purpose of searching the automobile." 226 P.2d at 450.

█ It is apparent in the instant case that the intent of the officers, as one of them stated, was to search the Volkswagon for suspected marihuana and it was for this reason the officers stopped the Volkswagon. The purported arrest for speeding was a mere subterfuge to allow a search of the vehicle without a warrant. Officer Hendricks had no knowledge there was marihuana in the Volkswagon, but merely suspected there might be, and Officer Day agreed to help him find out. The argument that this was a valid traffic violation arrest, is seriously flawed by the fact that a McAlester drug officer purportedly drove up to assist a Hartshorne policeman give a speeding ticket inside the City of Hartshorne without a request or indication of trouble. Officer Hendricks did not know the Volkswagon was speeding and wasn't paying any attention to what Officer Day was doing when he began his inspection of the Volkswagon pursuant to his stated intent to search for marihuana. It strains credibility to say Officer Hendricks' search was merely incident to the giving of a traffic citation.

Even if the Volkswagon was stopped for a traffic violation, a "search incident to arrest is unreasonable if there is a lack of relation between the search and the offense for which the arrest was made." Lawson v. State, Okl.Cr., 484 P.2d 1337 (1971). Since Officer Hendricks was not looking for weapons and since there is no physical evidence of a speeding violation, then there is no relation between the traffic offense and the detailed search he conducted. Generally, a "minor traffic violation will not support a search and seizure." Ellsworth v. State, Okl.Cr., 295 P.2d 296 (1956). "Officers are not justified after a valid arrest of motorist for minor traffic violation, in searching his person or his immediate presence, such as the seats and glove compartment of his car . . . ." Brinegar v. State, 97 Okl.Cr. 299, 262 P.2d 464 at 466 (1953). A "lawful arrest of an automobile driver for a traffic offense provides no lawful predicate for the search of the driver or his car—absent special circumstances." Amador-Gonzalez v. United States, 391 F.2d 308, at 315 (5th Cir. 1968). "On arrest for a traffic violation there is no lawful predicate for a search of the driver or the vehicle absent special circumstances where the officer has probable cause to search the area in which the arrestee may reach for a weapon or to destroy evidence of the crime for which he is arrested. A search exceeding these limits is constitutionally unreasonable and the fruits thereof inadmissible." Lawson v. State, supra, 484 P.2d at 1338.

█ There were no special circumstances which provided probable cause to search the vehicle in this case. There was no arrest warrant for any of the occupants, no indication they were dangerous or armed, and no stolen car report on the vehicle. The officer's mere suspicion that he might find marihuana in the vehicle is not such a circumstance as to provide probable cause for a warrantless car search. "An officer seeking the enforcement of one law should not violate another in order to accomplish his purpose." Johnson v. State, supra, 220 P.2d at 472. Accordingly, we hold the trial court erred in overruling the motion to suppress and the evidence obtained thereby should have been excluded.

## II.

Another proposition requires comment. Defendant further argues that the trial

court erred in instructing the jury that marihuana was a narcotic. Relevant to this consideration are three of the court's instructions. Instruction No. 2, a verbatim quote of 63 O.S.1961 § 402, reads as follows:

"You are instructed that the Statutes of the State of Oklahoma provide: It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound *any narcotic drug,* except as authorized in this Act." (Emphasis added.)

Instruction No. 3, a verbatim quotation of 63 O.S. 1961 § 451, advised in essence that it is unlawful for any person to plant, cultivate, harvest, barter, sell, give away, or possess marihuana.[2]

Instruction No. 5 reads:

"You are instructed that if you believe from the evidence in this case beyond a reasonable doubt that the defendant did in Pittsburg County, State of Oklahoma, either alone or in conjunction with others on or about the date charged in the information, unlawfully, wrongfully, wilfully and feloniously *possessed a narcotic drug, to-wit: marihuana,* you shall find the defendant guilty as charged in the information. If you fail to so find, your verdict shall be not guilty." (Emphasis added.)

Defendant was charged with possession of marihuana in violation of 63 O.S. 1961 § 451. Defendant was not charged with possession of a narcotic drug. Marihuana is not now, nor has it ever been, defined as a narcotic drug.[3] The Narcotic Drug Act, 63 O.S. 1961 § 401 to § 424, enacted in 1935, defines narcotic drugs in § 401(13) essentially as coca leaves, opium, isonipecaine, amidone, isoamidone, or ketobemidone.[4] This definition makes no mention of marihuana nor its chemical ele-

---

2. 63 O.S.1961 § 451 reads: "It shall be unlawful for any person, or any officer or employee of any firm, corporation or association to plant, cultivate, protect, harvest, cure, prepare, barter, sell, give away, or use, or offer to sell, furnish or give away, or to have in his or their possession Marihuana, botanically known as Cannabis Sativa, Cannabis Indica, commonly called Indian Hemp, Mexican Hemp, Marihuana, Muggles Mooter, or any drug or preparation made from any species or variety of the botanical genus Cannabis or any compound derivative or preparation of the above mentioned plant, or to prepare or supply for smoking purposes, or prepare or supply any effusion or concoction of Cannabis; Provided, it shall not be unlawful to barter, sell, furnish or give away the bast fibres alone, or any cloth, cordage, rope or other materials compounded of the bast fibres alone of these plants; provided, further, that it shall not be unlawful for any licensed pharmacist to have in his possession any of the said drug or derivative of said plants for sale upon the written prescription of a physician, osteopathic surgeon, dentist, or veterinary surgeon, licensed to practice in this State."

3. The statutory provisions relevant to marihuana (63 O.S.1961 §§ 451 to 457) and narcotics (63 O.S.1961 §§ 401 to 424) existing at the time of defendant's trial have since been superceded by the Uniform Controlled Dangerous Substances Act (63 O.S.1971 §§ 2–101 to 2–610). The definition of narcotic drug, § 2–101 (21), is quite similar to its predecessor, § 401(13), and does not encompass marihuana defined in the new Act in § 2–101 (19).

4. 63 O.S.1961, § 401(13), reads: "(13) 'Narcotic Drugs' mean: a. Coca leaves, or opium, or any compound, salt, or derivative preparation of coca leaves or opium, including any synthetic compound whatever which has similar action or effect upon the human body, whether or not they are known or described by copyrighted or chemical names. b. Isonipecaine, identified chemically as 1–Methyl–4–phenyl-piperidine–4–carboxylic acide ethyl ester, or any salt thereof, by whatever trade name designated. c. Amidone, identified chemically as 4–4–Diphenyl–6–Dimethyl-amino-Heptanone–3, or any salt thereof, by whatever trade name designated. d. Isoamidone, identified chemically as 4–4–Diphenyl – 5 – Methyl – 6 – Dimethyl-amino-Hexanone–3, or any salt thereof, by whatever trade name designated. e. Ketobemidone, identified chemically as 4–(3–Hydroxyphenly) – 1 – Methyl – 4 – piperidyl ethyl ketone hydrochloride, or any salt thereof, by whatever trade name designated."

ments by any name. It can be seen from an examination of the statutes that the provisions relevant to narcotics, 63 O.S. § 401 to 424, are separate and distinct from those relating to marihuana, 63 O.S. 1961 §§ 451 to 457.

Upon considering various authorities on the subject, the court in State v. Carus, 118 N.J.Super. 159, 286 A.2d 740, at 741 (1972), observed that the "consensus of opinion was and continues to be that marihuana . . . is not a narcotic drug and that its effects on the mind and the nervous system are substantially different from those caused by opium and cocaine and other derivatives."

The Supreme Court of Illinois in People v. McCabe, 49 Ill.2d 338, 275 N.E.2d 407, at 413 (1971), in a thorough consideration of the subject, stated that the "observations to be drawn on marijuana are that it is not a narcotic and it is not truly addictive." The court concluded that the "classification of marijuana under the Narcotics Drug Act rather than under the Drug Abuse Control Act has been arbitrary" and "offends the equal-protection clause of the United States constitution" and the Illinois Constitution.

We therefore conclude that marihuana is not a narcotic drug under Oklahoma Statutes, and the trial court's instructions to that effect are error. Instruction No. 2, quoting 63 O.S. § 402, related solely to narcotics and its inclusion was incompatible with the charge and the evidence. Instruction No. 5 advised the jury marihuana was a narcotic drug which was clearly an error in the law, under the evidence at this trial. It is fundamental that instructions must be based upon the pleadings, the evidence, and applicable law. Anderson v. State, 13 Okl.Cr. 264, 164 P. 128 (1917). The trial court's instructions "should not extend beyond a plain statement of the law applicable to the case."

Colby v. State, 57 Okl.Cr. 162, 46 P.2d 377 (1935).

For these reasons the judgment and sentence is hereby reversed and remanded.

BUSSEY, P. J., and SIMMS, J., concur.