## JOHNSON v. STATE.

No. A-11156. July 12, 1950.

(220 P. 2d 469.)

64

Ryan Kerr, Altus, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, P. J. The defendant, Melvin Johnson, was convicted in the district court of Jackson county for the illegal transportation of whisky, a fourth offense, and has appealed.

It is contended that the trial court erred in overruling the motion to suppress the evidence presented by the defendant.

There is very little dispute in the testimony of the defendant and the two highway patrolmen as to the facts surrounding the search and seizure of the whisky in question.

Defendant was a known whisky peddler. A few nights before the night in question the highway patrolmen had, to quote from the testimony of the patrolmen, "quite a

chase with him", and charges had been filed based on the evidence obtained in that chase. The defendant, his car and the license number of his automobile were all known to the highway patrolmen.

On the night of May 8, 1947, the highway patrolmen were at the nine mile corner south of Altus on highway 283. The defendant turned onto the highway at that point in his automobile and started on the road toward Altus. The patrolmen started following defendant and followed him for about six miles. One of the patrolmen testified:

"As the car went on up the highway it got across the center line a couple of times, and we got to wondering and decided to see if something was wrong; if something was the matter with him. We pulled up and stopped him and Melvin got out of the car and walked back to our car. I asked him what was the matter, and he said there wasn't anything, and we asked why he was driving back and forth across the road and he said he hadn't noticed himself doing that. We talked to him a minute or two and I asked him for his driver's license and he gave me his driver's license. I wrote him a warning up. I could say a warning is issued for minor violations. In the meantime I got out of the patrol car and walked back to Melvin's car with him."

The patrolman testified that after he had walked back to the defendant's car he looked over into the car by the lights of the patrol car and saw a box sitting in the back seat with some bottles in it with whisky seals on the top of the bottles. That he then arrested the defendant, searched him, and seized the box of bottles which contained whisky.

The chief discrepancy between the testimony of the defendant and that of the highway patrolman is whether the patrolman saw the box by the lights of the patrol

car or whether, as testified by the defendant, the officer flashed a light into defendant's car and saw the box sitting on the floor. The officer said the box was sitting on the back seat with the top raised so that the bottles could be seen. The defendant said the box was sitting on the floor between the front and back seats with the top down and that the officer turned his flashlight on and looked into the car and into the box before he could see the whisky.

This discrepancy as to whether the whisky was sitting on the seat or on the floor and whether it was seen by the officer using his flashlight or by reason of the light from the officer's automobile is immaterial as we view the law.

The only attempted justification for the action of the officers in forcing the defendant to stop his automobile was because he allegedly drove across the center of the line in the highway. He was not driving at a fast rate of speed and he had not been drinking intoxicating liquor. The defendant stopped his automobile because of the restraint placed upon him by the officers. No attempt was made by the officers to arrest the defendant for reckless driving. The defendant, after his car was stopped, walked from his car back to the car of the patrolmen. Patrolman Bowers then gave the defendant a lecture on driving across the center line. He was not arrested, but according to the officers he was warned to not repeat the offense. When defendant started back to his automobile to leave, one of the patrolmen got out of the patrol car and walked back to defendant's car with defendant. At that time there had been no crime committed in the presence of the officer but the defendant was under restraint. He had been forcibly

stopped and the officer still had him in constructive custody by accompanying him back to defendant's car.

Whether the whisky was sitting on the back seat or on the floor, or was seen by the light of the patrol car or by the aid of the flashlight is immaterial because the defendant was under unlawful restraint at the time the whisky was seen. No crime had been committed in the presence of the officers to justify the arrest of the defendant. It is asking us to strain our credulity to believe that the officers had followed the accused for about six miles and then decided to stop him merely to warn him against driving about 18 inches across the center line of the highway. It is apparent to us that because the officers knew the defendant had been engaged in the whisky business they had determined to search the automobile and were using the alleged driving across the center line as an excuse for the arrest of the accused. If they had intended only to warn him against his driving the officer would not have accompanied defendant back to defendant's automobile after the lecture had been given. If a warning was all that had been necessary, then the officers had completed their job and the defendant should have been free from further restraint. Instead the officer kept him under constructive custody to the extent that he accompanied him back to his automobile where he allegedly discovered the intoxicating liquor.

There have been many cases similar to the instant case. In some of them the facts were even more favorable to the state's case than the facts in this case, and in all of them we have uniformly held that the search and seizure was an unlawful violation of defendant's right to immunity as guaranteed him by the Constitution of the state, art. 2, § 30.

In Bowdry v. State, 64 Okla. Cr. 86, 77 P. 2d 753, 756, this court stated:

"There is no contention by the witness Wheeler, who was a highway patrolman, that he could see the defendant had whisky in his car at the time he stopped him upon the public highway without a warrant for his arrest or to search his car. The patrolman's effort to justify his unlawful act that the defendant was driving recklessly or intoxicated is not sustained by his own testimony, but there is no contention that the defendant was intoxicated or drunk at the time he stopped him. An officer seeking the enforcement of one law should not violate another in order to accomplish his purpose. Such conduct brings the administration of justice into disrepute and shows a subversion of peace and good order. When the officer stopped the defendant on the highway and searched his car, he did so without any legal authority and the search and seizure was an unlawful violation of the defendant's rights as guaranteed him by the laws and the Constitution of the state of Oklahoma, art. 2, § 30.

"Where an officer does not know of the act constituting the offense, it is not committed in his presence. The defendant may be guilty, but he is entitled to a fair and impartial trial and to have all incompetent testimony excluded."

Other cases in point are: Tucker v. State, 62 Okla. Cr. 406, 71 P. 2d 1092; Hoppes v. State, 70 Okla. Cr. 179, 105 P. 2d 433; Jones v. State, 82 Okla. Cr. 91, 166 P. 2d 443; Lamb v. State, 59 Okla. Cr. 360, 60 P. 2d 219; Bowen v. State, 50 Okla. Cr. 36, 295 P. 623. In Jones v. State, supra, this court held:

"A search of an automobile without a search warrant and not as an incident of a lawful arrest, and not on any probable cause of the commission of a felony, but on mere suspicion, violates the constitutional provision forbidding unreasonable searches or seizures, and evidence obtained by such a search is inadmissible.

"Where an officer, after lawfully stopping or restraining a person, becomes aware that an offense is being committed or is about to be committed in the officer's presence, he may lawfully arrest the offender without a warrant, but where the officer becomes aware of the facts constituting the offense after making an unlawful arrest, the arrest cannot be justified as being for an offense committed in the officer's 'presence.'

"The search of motorist's automobile without warrant of arrest, or search warrant, or knowledge that automobile contained intoxicating liquor, after motorist was unlawfully arrested, was an 'unreasonable search' within meaning of the Constitution giving the right to be secure against 'unreasonable searches,' and evidence obtained from the motorist should have been excluded in prosecution for the unlawful possession of intoxicating liquor."

It is apparent to us, based on the evidence and the reasonable inferences to be drawn therefrom, that the officers were suspicious that defendant was transporting intoxicating liquor in his automobile. They started following it with the intent to investigate and search the car because of their suspicion. Defendant was driving at a very moderate rate of speed and the officers followed him for several miles before they forced him to stop by sounding their siren and turning the red stoplight on him. The fact that defendant might have crossed the center line of the highway a few inches during this drive was merely used as a subterfuge by the officers to cover up their determination to search defendant's car. The officers did not become aware of the whisky being contained in the automobile until they discovered it after forcibly stopping defendant. The stopping of defendant's car under the authority of Hoppes v. State, supra, constituted a constructive arrest of the defendant at that time and under the authority of all of the above-cited

cases this unlawful arrest could not be used as a basis for making the search which discovered the whisky.

We have absolutely no sympathy for this whisky man, but if we should ignore the plain language of the Constitution and statutes of Oklahoma and the former decisions of this court in order to make it easier to convict this bootlegger, then such precedent could conceivably be used to harass multitudes of innocent people by subjecting their persons or automobiles to search upon the mere whim or suspicion of the officer.

The trial court having erred in overruling defendant's motion to suppress the evidence, the judgment of the district court of Jackson county must be and accordingly is reversed and the case remanded with direction to dismiss.

BRETT and POWELL, JJ., concur.