# LEACH v. STATE.

No. A-11420.  Sept. 19, 1951.

(235 P. 2d 968.)

W. C. Henneberry, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, J.  Johnnie Leach, plaintiff in error, who will hereinafter be referred to as defendant, was charged by information filed in the county court of Rogers county, Oklahoma, with the offense of transportation of intoxicating

liquor, from an unknown point within the State of Oklahoma to certain points specified and set out. A motion to suppress was first heard and overruled, and the defendant waived trial by jury. At conclusion of the examination on the part of the state, counsel for defendant moved that all the testimony relative to the liquor be stricken, for the reason that the search was made in violation of law. The court overruled the motion, and defendant rested and introduced no further evidence. The court thereupon entered judgment finding the defendant guilty as charged, and assessed his punishment at a fine of $350 and costs, and 60 days confinement in the county jail. Appeal has been duly perfected to this court.

Some seven allegations of error are set out in petition in error, but are so interrelated that they are argued together. It is contended principally that the motion to suppress the evidence should have been sustained. The disposition of that proposition will determine the outcome of the appeal.

There is no question but that the defendant was hauling around 100 cases of whiskey in his truck at the time the officers making the arrest took possession of the truck. The question is whether or not the officers were justified in making the arrest and searching defendant's truck in the absence of having a warrant.

In support of the motion to suppress, the defendant offered the testimony of a number of witnesses. Amos Ward, sheriff of Rogers county, testified that on December 16, 1949, as sheriff of Rogers county, at around 5 o'clock in the morning, he was on Highway 33 north of Inola driving east and met defendant's truck, being driven west. He was asked:

"Q. Who was with you in your automobile? A. Bill Bryant was in his automobile, Bill Bryant and Melvin Foster. Q. Is he a deputy sheriff? A. No, sir. Q. What official position does he hold? A. None. Q. None at all? A. No, sir."

Witness then stated it must have been between 3 or 4 o'clock in the morning that they were out looking for a colored man accused of a sex crime; that they had a rifle, a machine gun and pistols. Witness stated that when they met defendant's truck they noticed that it did not have clearance lights in front or a tail light, so they stopped and turned around to give chase. That on gaining a hilltop they could not see the truck, but noticed dust on a side road; that defendant was not travelling too fast; that when they came in sight of defendant on the gravelled road they put their red light on the truck and blew the siren, but defendant would not stop, so they got close behind and opened up with the machine gun and other firearms; admittedly they shot between forty and fifty rounds at the truck, nine or ten shots around the taillight, a number in the mudflap over the tire, and shot the license tag off; that several shots went through the cab and hood, and some into the cargo. Witness claimed that when the truck turned on to the gravel road the driver turned off the headlights and drove about fifty or seventy-five yards without lights; that he turned them on when they commenced to follow him on the gravel road; that they chased defendant around the Gregeory neighborhood and the highway to the coal dumps east of Catoosa, and highway 66 west of Catoosa and back into Catoosa again, and finally to the farm of defendant's father, through three wooden gates and one metal gate. He testified:

"Q. You were attempting to arrest him, that was why you were shooting tail lights? A. Yes to try to stop him. Q. You thought he was trying to run off? A. He wouldn't stop. Q. You didn't know what the cargo was? A. No, sir.

"Q. You finally got him to stop? A. Yes sir. Q. You charged him with reckless driving and not with not having tail light and possession of liquor, is that correct? A. Yes, sir. Q. Reflector in the car? A. Yes, sir."

Bill Bryant testified that he was a deputy sheriff and was with the sheriff and that his testimony would be substantially as that of the sheriff, and it was so stipulated between counsel for the State and for the defendant.

Melvin Foster testified that he was with Sheriff Ward and Deputy Bryant and that his testimony would be substantially as that of the sheriff. He further contended that the rear lights he saw on defendant's truck were lights from reflectors, and not from a tail light.

Ray Leach, defendant's father, who lived a half mile north and east of Catoosa, swore that he saw the taillight, but admitted that he was paying more attention to the shooting as the vehicle passed than to the lights.

Jim Leach testified that he was a brother of defendant; that he observed part of the chase, observed his brother driving around over his father's field and being chased by persons who were firing at defendant. He noticed rear lights but did not know whether the lights came from reflectors or the tail light. But he stated that when the truck came to a stop and after the sheriff stopped it the taillight was burning. He stated that he was inside his home when he first heard the commotion and went to the front and looked out. Witness admitted that he had been convicted on a liquor charge.

Lance DeWitt swore that he lived approximately a quarter of a mile south of Catoosa and on the morning in question was in his yard with his dogs, that he had been trapping, that he saw defendant go by in his truck, followed by a car, heard the firing, and that after defendant passed he could see his taillight on the left rear of the truck.

A stipulation was then entered into between the parties that the sheriff had no search warrant or warrant to arrest defendant at the time of the occurrence in question.

The motion to suppress was overruled. The defendant excepted. The state used but one witness, Sheriff Ward, but it was stipulated that the evidence of Deputy Bryant would be substantially the same as that of the sheriff.

On trial of the case, the sheriff testified substantially as on motion to suppress, except he was not as positive about the clearance lights and taillight. Said he:

"Q. What was the occasion for you first apprehending the truck of Johnny Leach? A. We met the truck, couldn't tell there were any clearance lights. As we passed it we thought there were no tail lights or clearance lights behind. We drove around in the road and turned and followed in the direction he went, and from the raise we didn't see any head lights. We noticed dust going north on the section line road so we started in that direction. When we turned in behind him he turned his lights on. Q. He turned north on the section line road? A. Yes, sir. Q. After he did, he turned his head lights on? A. Yes, sir."

Witness stated that they chased defendant forty or fifty miles; that he went around sections and finally ran through three wooden gates and one steel one on his father's farm. He further testified that the defendant possessed a federal retail liquor license, and a certificate from the Collector of Internal Revenue was introduced showing a current license.

The immediate question for determination is whether from the evidence the officers had cause for the arrest of the defendant at the time they placed the red light on him. Specifically, had he violated the law in their presence so as to be subject to arrest? If the defendant did not have proper lighting on his truck, as prescribed by Tit. 47 O. S. A. § 131 and § 148, amendatory, he would be

guilty of a misdemeanor and subject to being arrested and fined. Tit. 47 O.S.A. § 133.

If the sheriff in fact discovered defendant on the highway with defective lights, such would be sufficient to cause the sheriff concern for the safety of the travelling public and by reason of the official duties of his office, compel him to endeavor to notify the motorist of the fact that some of his lights were not burning, and to seek correction. The absence of proper lights or evidence that defendant was aware that the required lights had burned out, or were not connected, and had failed to take corrective measures, would justify the sheriff in arresting the defendant without a warrant for a misdemeanor committed in his presence. Tit. 22 O. S. A. § 196.

Art. 2, § 30 of the Bill of Rights, Constitution of Oklahoma, provides:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

But the prohibition of art. 2, § 30 of the Bill of Rights of unreasonable searches and seizures does not preclude search and seizure without a search warrant where incident to lawful arrest. Crim v. State, 78 Okla. Cr. 153, 145 P. 2d 444; Moore v. State, 90 Okla. Cr. 415, 214 P. 2d 966.

We should keep in mind the difference between the federal "probable cause" rule and the state rule in this kind of a case. The test in the federal cases is whether the officers acted upon a belief reasonably arising out of the circumstances to the searching officers, that the motor vehicle contained whiskey. And a search without a warrant upon such reasonable belief would be valid. Such rule is followed in many decisions of the Federal Courts: Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790, and in Brinegar v. United States, 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879. But as stated in State v. Simpson et al., 91 Okla. Cr. 418, 219 P. 2d 639:

"Oklahoma does not follow the federal rule in this regard. The constitution and statutes of Oklahoma as interpreted by the decisions of this court for more than forty years is that where the offense is not a felony an officer cannot arrest without a warrant, unless the offense was committed or attempted in his presence, and, where the officer does not know of the act constituting the offense, it is not committed in his presence." See cases cited.

It is the further rule in this jurisdiction that whether search and seizure without a warrant is unreasonable within the constitutional provision forbidding unreasonable searches and seizures, is a judicial question to be determined in each case in view of all the facts and circumstances under which the search and seizure is made. Edwards v. State, 94 Okla. Cr. 11, 228 P. 2d 672; Jones v. State, 82 Okla. Cr. 91, 166 P. 2d 443; State v. Simpson, supra. All unlawful searches are unreasonable. McClary v. State, 34 Okla. Cr. 403, 246 P. 891; Mason v. State, 60 Okla. Cr. 392, 64 P. 2d 1238; O'Dell v. State, 80 Okla. Cr. 194, 158 P. 2d 180; Farmer v. State, 86 Okla. Cr. 308, 192 P. 2d 716.

In Jones v. State, supra, this court stated:

"An officer without a warrant cannot arrest for an offense which was not a felony, unless offense was committed or attempted in his presence.

"A peace officer may arrest without a warrant for a misdemeanor only where the misdemeanor is committed or attempted in his 'presence,' and if the officer is unaware of the act constituting the misdemeanor, it is not committed in his 'presence.'

338

\* \* \*

"A search of an automobile without a search warrant and not as an incident of a lawful arrest, and not on any probable cause of the commission of a felony, but on mere suspicion, violates the constitutional provision forbidding unreasonable searches or seizures, and evidence obtained by such a search is inadmissible."

The test here of course is whether or not the officers had sufficient grounds for the arrest of the defendant for operating his truck without proper lighting at the time they attempted to overhaul him and his truck. Being a judicial question, the action of the lower court in refusing to suppress the evidence will be sustained where there is competent evidence to support such action. Mitchell v. State, 73 Okla. Cr. 184, 119 P. 2d 99. And while this court will not weigh conflicting evidence, the evidence supporting the action of the trial court must be sufficiently credible to satisfy this court in affirming the trial court.

In the hereinafter cases, while the facts in each case are somewhat different from the facts in the within case, nevertheless the officers interposed as grounds for searching the motor vehicles involved in the respective cases, that each of the respective defendants had committed a misdemeanor in their presence. This court did not so find, but found that the searches were made on suspicion, and were unreasonable. Manifestly, each case must be decided on its own facts and circumstances. Morris v. State, 66 Okla. Cr. 384, 92 P. 2d 609; Banker v. State, 61 Okla. Cr. 169, 66 P. 2d 955; Jones v. State, 88 Okla. Cr. 243, 202 P. 2d 228; Bowdry v. State, 64 Okla. Cr. 86, 77 P. 2d 753, 756; Johnson v. State, 92 Okla. Cr. 63, 220 P. 2d 469; Holland v. State, 93 Okla. Cr. 180, 226 P. 2d 448; Isbell v. State, 7 Okla. Cr. 736, 123 P. 1130; Ingraham v. State, 48 Okla. Cr. 178, 290 P. 344.

From the sheriff's testimony, when he met defendant's truck it is stated that the headlights were burning, but the sheriff thought that he noticed that the clearance lights in front and the taillight were not burning. On trial the sheriff was not so sure about the lights. He stated "We met the truck, couldn't tell there were any clearance lights. As we passed it we thought there were no taillights or clearance lights behind." The sheriff further stated that he filed charges against defendant for reckless driving, rather than for not having his truck equipped with proper lights. To account for this, the reasonable presumption is that when the sheriff finally took possession of the truck his suspicion concerning the lights must have proven unfounded, and the truck must have had proper lights and in working order, or he had shot them all out, or else he would have filed a charge involving the operation of a truck without proper lights, rather than a charge of reckless driving. This, because, as heretofore stated, the sheriff's right to arrest defendant and search his truck depended on a cause for arrest at the time he first attempted to overhaul him, and not on subsequent events, though as a matter of fact, so far as the within case is concerned, there was no evidence of reckless driving on the state or county roads at any time.

Neither was there evidence of reckless driving at the time the sheriff turned the red light on the defendant and sought to place him under arrest. It is true that the defendant failed to stop his truck but endeavored to dodge and elude his pursuers and get away. On the other hand, the defendant was on an untravelled country road at the time when the red light was directed on him and the machine gun commenced to chatter and the rifle and pistols commenced to break the stillness of the night and when the lead commenced to whine by and into the defendant's truck. There is no evidence that the defendant knew that it was the sheriff who was attempting with his deputy and a layman to

overhaul him. It would have been reasonable for him to conclude that he was being hijacked, as he could not be held to expect the officers to so violate the law as to make themselves guilty of a felony by shooting around fifty or more bullets at him, some three of which went through the cab of his truck. His life was endangered. A peace officer is not permitted to fire on citizens with impunity. And where this happens the citizen may defend himself. See Roberson v. United States, 4 Okla. Cr. 336, 111 P. 984, where the citizen did just that. A peace officer has no lawful right to shoot, or shoot at, a person who is attempting to escape arrest for a misdemeanor, unless the offender resists to such an extent as to place the officer in danger of loss of life, or great bodily harm. Roberson v. United States. supra; Sharp v. United States, 6 Okla. Cr. 350, 118 P. 675; Pamplin v. State, 21 Okla. Cr. 136, 205 P. 521; Graham v. State, 31 Okla. Cr. 125, 237 P. 462, 464; Galligan v. State, 57 Okla. Cr. 13, 42 P. 2d 550.

As stated in Graham v. State, supra:

"An officer seeking the enforcement of one law should not violate another in order to accomplish his purpose. Such conduct brings the administration of justice into disrepute, and tends to the subversion of peace and good order."

In the within case the sheriff denied knowing the defendant, or having information about the load of liquor that he was hauling. There was no evidence as to whether either the deputy or the layman possessed such knowledge.

Is it reasonable that if the sheriff or someone in his party, did not know this driver, or on the other hand if they had known him to be a farmer with a load of wheat or cotton that the sheriff and his deputy and the layman would machine-gun such stranger or known farmer because he did not stop to have his lights checked? Particularly where, under the circumstances as in this case, it would be reasonable for the driver to believe that he was about to be hijacked? Such is not credible because the law makes such conduct by the officers a felony. There would have to be a strong and impelling motive to cause an officer to so violate the law, risk prosecution and endanger the lives of any other possible users of the road or persons who lived close by the road, to act as in this case.

The driver had a load of whiskey valued at thousands of dollars. He was heading towards his father's farm, which was apparently a large and well-improved farm. One with that much whiskey is bound to have had customers which would be noticed by county officers. Is it conceivable that the sheriff or his deputy or the layman with him could be so unfamiliar with the county and things that might be going on, as not to be acquainted with such a big operator? Is it not logical to assume at least that they immediately on viewing the truck in question distinguished it from the ordinary farm truck using the roads? If the sheriff or one of his companions knew that the driver had a heavy load of whiskey worth thousands of dollars or suspicioned it strongly, it is conceivable that some excuse for search without a warrant might be thought justifiable and attempted. Such a compelling suspicion of law violation might cause an overzealous officer to risk committing a felony, but it seems ridiculous to entertain the idea that any person qualified to be an officer would deliberately machine gun some farmer with a known load of farm products just because he failed for some reason to stop his truck when challenged. Must this court ignore such truths? We think not. We would in fact be most naive to do so. This court has no sympathy for the whiskey handler or the loss that defendant has sustained growing out of his arrest, yet this court has from the beginning said that

"Every person charged with crime, whether [he be] guilty or innocent, is entitled to a fair and impartial trial according to the due and orderly course of

the law, and it is a duty resting upon the courts to see that the guaranty of such a trial * * * shall be upheld." Ex parte Stinnett, 71 Okla. Cr. 184, 110 P. 2d 310, 311; Cline v. State, 57 Okla. Cr. 206, 47 P. 2d 191.

From a painstaking study of the record in this case, and after careful consideration of the brief of the Attorney General, we come to the conclusion that the testimony and conduct of the prosecuting witness, in view of the contradictions evident, was insufficient to show the commission of an offense by the defendant in the presence of the arresting officers at the time they commenced to follow the defendant, with that certainty and satisfaction that would justify this court in affirming the judgment. The evidence and the deductions logically flowing therefrom compel the conclusion that the officers had no warrant for the arrest of the defendant nor a search warrant, and the apprehension and search was based on suspicion only and is sought to be justified by indefinite apprehension as to the truck lighting. This was in violation of the constitutional and statutory rights of the defendant and was seasonably objected to.

The arrest being illegal, the search of defendant's truck was illegal and unlawful and the fruits of such search was inadmissible in evidence against defendant, and his motion to suppress should have been sustained. This court has by a long line of cases adhered to the principle that evidence obtained by means of an illegal search and seizure by public officers is not admissible against the accused in a criminal case where timely application is made to suppress or exclude such evidence. See Annotation, 134 A. L. R., 819, 823; Lucas v. State, 56 Okla. Cr. 413, 41 P. 2d 131; Hoppes v. State, 70 Okla. Cr. 179, 105 P. 2d 433; Johnson v. State, supra.

The judgment of the lower court is therefore reversed and the cause remanded, with directions to discharge the defendant.

BRETT, P. J., and JONES, J., concur.