Francis McCORMICK and Evans Forrester, Plaintiffs in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12030.

Criminal Court of Appeals of Oklahoma.

Nov. 24, 1954.

W. C. Henneberry, Tulsa, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

The plaintiffs in error, hereinafter referred to as defendants, were charged by information filed in the county court of Osage County with the unlawful transportation of intoxicating liquor. A jury was waived, and the matter first came on for hearing on a motion to suppress certain evidence. The defendants called as a witness A. L. Barger, one of the arresting officers, and thereafter the State called Sid Wilson, the other arresting officer. It was then agreed that the evidence on the motion to suppress might be considered as the evidence in the case.

The court, after hearing the evidence, entered judgment overruling the motion to suppress, and the demurrer to the evidence, finding the defendants guilty as charged, and assessed a penalty against each defendant of 30 days imprisonment in the county jail, and a fine of $250.

While there are a number of assignments of error, the determination of the question of whether or not the court erred in not sustaining the defendants' motion to suppress the evidence will determine the outcome of this case.

There is no question but that the defendant McCormick was driving the car described in the amended information at the time the officers blocked the highway, causing his car to be stopped, and arrested him and his companion in the car, Evans Forrester, and thereafter on search, found 844 pints of assorted tax-paid intoxicating liquor in the car. The vehicle belonged to the defendant Forrester.

It is the duty of appellate courts to seek to uphold the judgments of trial courts if such can be done within the law. And where evidence points unmistakably to the guilt of an accused, technical matters not involving the deprivation of the accused of his fundamental or constitutional rights, standing alone, should have no weight in the outcome of a case.

It is fundamental that a person may not be convicted by evidence illegally obtained, if seasonable objections are made. This principle of law is too well settled to require a recitation of the historical development. Stouse v. State, 62 Okl.Cr. 46, 70 P.2d 145; Ketcham v. State, 63 Okl. Cr. 428, 75 P.2d 1159; Johnson v. State, 92 Okl.Cr. 63, 220 P.2d 469; Humphries v. State, 94 Okl.Cr. 319, 235 P.2d 975; Leach v. State, 94 Okl.Cr. 334, 235 P.2d 968; Brinegar v. State, Okl.Cr., 262 P.2d 464.

In support of their motion to suppress, defendants developed the following by the testimony of A. L. Barger, deputy sheriff of Osage County: That on the night of February 23, 1953 he and officer Sid Wil-

son arrested the defendants in Osage County about a mile west of the Washington County line; that they did not act under authority of a search warrant or a warrant of arrest; that they had received information that there might be a transfer of intoxicating liquor from one car to another out near the county line; that for a night or two they had driven in the vicinity of the point in question · and had followed a number of cars but had not made any arrests until the night in question. They did not know who the parties might be, and did not have a description of the cars that might be involved. The officers parked their car by the side of a road near a "Y" in the vicinity of where U. S. Highway 66 crosses the Osage-Washington County boundary, and they noticed two cars which they followed, and observed that they turned off on a road that ran to the smelter town and on to Bartlesville. This was after dark, and around ten o'clock. Witness stated that they followed the cars on suspicion; they were half a mile behind; the cars turned off on a dirt road that went to the Esther Daniels place, and after they drove off on this road for about a block they observed two cars parked just off the dirt road in a "swag" and just as they got there they kind of stopped and went to turn in, and one of the cars "took off" over the rough ground and the officers turned on the red light and siren and sought to head off the car that was being driven through the weeds toward the other road that was about a block distant. They headed this car off and stopped it as it got on the highway. Witness had a shotgun sticking out of the side of the car as the officers drove up, and he took his gun with him and the officers got the two occupants out of their car around in front of the car. Officer Wilson asked defendant McCormick, the driver: "What you got?" and he answered, "Well, I'm loaded". He was then asked, "How much you got?" and he replied, "Well, quite a little bit—pretty good load."

Witness further stated that they did not search the car at the time, but he arrested the defendants and witness took the defendant Forrester in Forrester's car, and officer Wilson took defendant McCormick in the officers' car, and they took them to Pawhuska. Witness did not remember that they advised the defendants what they were being arrested for, but both defendants were placed in jail and a charge of reckless driving was filed against McCormick, and then the present charge was filed. Witness stated that defendants left where they were parked in low gear until they reached the road, about a block away, and he estimated the speed at 35 or 40 miles per hour; that there was no traffic on the road that defendants reached by driving over the shoulder at a point not entered by a road.

The State produced officer Sid Wilson of the State Crime Bureau, the other arresting officer. His testimony was substantially as that of officer Barger. He did state that he was driving the car occupied by officer Barger and himself, and that he did not know the occupants of the other cars. He was asked on cross-examination:

"Q. And everything that you did was done upon suspicion or information, wasn't it? A. That's right." Witness further testified:

"Q. There wasn't anything in your observation that would have caused you to file reckless driving charges against him, unless you wanted to lay the foundation for an unlawful search and seizure, would there be? A. I don't know; there's a question there whether it was reckless driving—and whether the road—being on a road or not. If it had been on a highway I would consider it reckless driving, and, there was a question of whether that would be reckless driving.

"Q. Well, you didn't consider filing it yourself, did you? A. No, sir.

"Q. And you didn't file it, did you? A. No, sir.

"Q. And if there was a question involved you would not have filed it yourself? A. Not unless I found out about it. I know I would want an opinion on it."

█ Was the arrest for reckless driving a subterfuge to get to search the car occupied by the defendants? We think that the evidence impels the conclusion that it was, for the officers stated that on account of the darkness they could not observe the persons or contents of the vehicles that they followed and especially the vehicle here involved. That they intended to drive into the "draw" where the two vehicles they had been following had stopped is beyond question, as officer Wilson stated that he was driving so fast that he drove past the place where they turned off, then slowed up and one vehicle "took off" and he turned his light and siren on and headed him off as he drove about a block in the draw and emerged on the roadway. The first thing defendants were asked was, "What have you got?" One officer had a shotgun pointed out of the car as they headed defendants off. They did not advise the defendants that they were being arrested for reckless driving, and only the driver of the car could have been arrested on such a charge, but both persons were arrested. The car was not searched for liquor out on the highway. The officers waited until they reached Pawhuska.

The arrest for reckless driving under the circumstances as disclosed by the record would not have entitled the officers to have searched the car. Brinegar v. State, Okl.Cr., 262 P.2d 464. But it is claimed that the defendant McCormick voluntarily advised the officers that he "had a pretty good load" which could have meant nothing but whiskey, and thus he waived the requirement for a search warrant.

█ There stands out the fact that the defendants were off the highway in a draw, were not even on a road, when the officers sped by, slowed up and made an effort to close in on the defendants, and they "took off" as the officers said. The officers had no information that they had committed a felony or were about to commit one. The fact that the defendants started driving up the draw to avoid a car that appeared to be closing in on them, or for any reason did not give the officers a right to make an arrest and search the car. The search commenced when they began maneuvering around to get in the little draw and turned their red light and siren on. Hoppes v. State, 70 Okl.Cr. 179, 105 P.2d 433. The defendants considered themselves under arrest, as the officers stated that they immediately told them that they were officers and that defendants were under arrest, though the officers did not advise the defendants for what crime they were being arrested. The fact that the answers of defendants to the questions of the officers could be interpreted as admitting they had a load of whiskey is of no consequence, as it was plain that defendants were under arrest and that a search was in the offing. For cases with comparable facts, see: Barnett v. State, 94 Okl.Cr. 293, 235 P.2d 555; Leach v. State, supra; Humphries v. State, supra.

█ As was said in the Barnett case, above, and in Holland v. State, 93 Okl.Cr. 180, 226 P.2d 448:

"A search of an automobile without a search warrant and not as an incident of a lawful arrest, and not on any probable cause of the commission of a felony, but on mere suspicion, violates the constitutional provision forbidding unreasonable searches or seizures, and evidence obtained by such a search is inadmissible."

It follows that the court erred in not sustaining the motion to suppress the evidence obtained by the unlawful search and seizure, and for such reason the case is reversed and remanded with directions to dismiss.

JONES and BRETT, JJ., concur.