Martin EDWARDS, Plaintiff In Error,

v.

The STATE of Oklahoma, Defendant In Error.

No. A–12509.

Criminal Court of Appeals of Oklahoma.

Dec. 4, 1957.

Rehearing Denied Jan. 8, 1958.

1022

Pat Malloy, Rooney McInerney, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

The plaintiff in error, Martin Edwards, hereinafter referred to as defendant, was

charged in the district court of Tulsa County with the crime of unlawful transportation of intoxicating liquor, second and subsequent offense; was tried before a jury and convicted, but the jury being unable to agree upon the punishment to be assessed, left that to the court, who assessed the penalty at a fine of $1,000, and imprisonment in the State Penitentiary at McAlester for a period of one year.

A motion to suppress was heard and denied in the common pleas court on preliminary hearing, and defendant was bound over to the district court, and motion to suppress was filed there, and submitted to the court on the transcript of testimony given at the hearing before the common pleas court. This evidence, of course, was not read in the hearing of the jury. Motion was denied, and thereafter defendant was tried before a jury, as stated. At the conclusion of the State's evidence defendant interposed a demurrer, which was overruled, whereupon defendant renewed his motion to suppress on the ground that the liquor involved was obtained by unlawful search and seizure. This motion was overruled, and thereafter the defendant testified in his own defense.

For reversal three propositions are advanced, and will be treated in the order presented: (1) That the court erred in overruling defendant's motion to suppress the evidence; (2) That the court erred in refusing to strike the case from the jury docket; and (3) That the sentence of the court is excessive.

Considering the motion to suppress, we find that the defendant called but one witness, being deputy sheriff Ray Pruitt, who said that on November 15, 1956 he was working with officer Bliss. He testified that he knew the defendant Edwards only by sight. He further testified that on the day in question he was sitting with officer Bliss in a car parked in an alley half a block away from the home of a known bootlegger named Massey. They had this place under surveillance, and were expecting some liquor to be delivered there.

He said that there was a car parked near the Massey home when they parked their car in the alley, but no one was in the car they saw, but he stated that in about ten minutes the defendant Edwards came out, got in this car and drove off. He said that he and officer Bliss had some conversation concerning Edwards, but, of course, was not permitted to relate what their conversation was. Nevertheless, he stated that he and officer Bliss drove after the defendant and caused him to stop his car. He was asked if he went over to the car of the defendant, and answered: "No, I didn't go to the car. I stood back up on the sidewalk, and Bliss went around the car and asked him for his driver's license. He said, 'You know I don't have a driver's license.'" He said that Bliss then told the defendant that he was under arrest, and that Bliss pulled a lug of whiskey out of the car. He said they did not have a search warrant. He said that when he and officer Bliss started pursuing the Edwards car he did not personally know whether Edwards had a driver's license or not. He said that he had not been a witness in a case filed in the court of common pleas wherein Martin Edwards was charged with failure to have a proper driver's license.

The State called officer Bill Bliss as a witness. He said that he and officer Pruitt on November 15, 1956 were parked almost opposite Dave Massey's home at 218 South Wheeling, Tulsa, when they observed defendant Edwards, whom he had known for two years, come out of a side door and go to a Ford car parked across the street. He was asked if he knew whether or not Edwards had a driver's license, and answered: "Well, my knowledge was he did not have them, because they had been taken from him in court." The court struck this answer, and witness was then asked: "Do you know of your own knowledge whether Martin Edwards had been charged, in this court [Common Pleas] with the offense of having no driver's license?" His answer was: "Yes, sir." He further testified that this was prior to November 15, 1956, and when

asked: "Do you recall approximately when that was that he was tried in this case in this court?" He answered, "No, sir, I haven't checked the record," but said it was several months.

Witness further testified that defendant got in the Ford car and drove off, and he and officer Pruitt followed him. He was asked "Why?" and answered: "I assumed that he had no driver's license. So far as I knew he had been charged and convicted and convicted [sic] for driving with no driver's license." Further: "Q. What did you do when you stopped him? A. I asked him for his driver's license, and he said, 'You know, Bill, I don't have any'. Q. Then what did you do? A. Searched his car, Oh, of course, I told him he was under arrest before I searched the car." He said that he found eight half pints of Glenmore whiskey under the driver's seat.

On cross examination by defendant's counsel officer Bliss was asked and testified:

"When you saw Martin Edwards go to Massey's, and then go to the car, and start to take off, did you have a suspicion that he had some whiskey in this car? A. No, I did not expect to find any/ * * *

"Q. You testified, I believe, from your knowledge, you knew that a case had been filed in some court here in Tulsa County some two or three months maybe, the exact date you do not recall, involving a driver's license? A. Yes, it was something about a driver's license and whiskey, *there were two cases*. (Emphasis supplied.)

"Q. Now, as to this particular question, of course you did not know of your knowledge whether Mr. Edwards had a driver's license, since that time, or whether he had obtained a driver's license, did you? A. No, sir."

The above is a fair summary of the material points of the evidence. The question is, did the court err in overruling the motion to suppress the evidence based on the ground that there was an illegal search that resulted in the finding of the liquor.

■ Of course, in the solution of this problem we disregard for the purpose of the motion all evidence produced during the course of the trial, and the burden rested on the defendant to prove the allegations of his motion to suppress the evidence complained of. Wirth v. State, 79 Okl.Cr. 59, 151 P.2d 819; Phinney v. State, 90 Okl.Cr. 21, 210 P.2d 205; Wilson v. State, Okl.Cr., 268 P.2d 585.

■ In going about the solution of the question posed, our task is simply to determine if there is competent evidence in the record reasonably tending to support the findings of the trial court, and if so, the criminal court of appeals will not reverse the lower court upon its findings of fact. Mitchell v. State, 73 Okl.Cr. 184, 119 P.2d 99; Griffin v. State, 90 Okl.Cr. 90, 210 P.2d 671.

It is argued by counsel for defendant that the "so called arrest" of the defendant for not possessing a driver's license was a pretext and subterfuge to get to search his car for whiskey. Of course, if the officers had in mind the search of defendant's car whether he had a driver's license or not, the search commenced when they started to pursue Edwards. (McCormick v. State, Okl.Cr., 277 P.2d 219.) However, officer Bliss denied that he had a suspicion that Edwards had any whiskey in his car. He said they had been awaiting an expected delivery of whiskey to the Dave Massey home. But he said that he recognized the defendant Edwards when he came out of the Massey home; that a few months before he had been in the common pleas court when Edwards had been convicted for driving without a license and also on a whiskey charge. Under such circumstances, it was his conclusion that he did not then have a driver's license. The key question is, did this give the officer a right to stop defendant and ask to see his driver's license?

47 O.S.1951 § 285, provides:

"Every licensee shall have his operator's or chauffeur's license in his immediate possession at all times when operating a motor vehicle and display

the same, upon demand of a peace officer, or a field deputy or inspector of the Commissioner. However, no person charged with violating this section shall be convicted if he produces in court an operator's or chauffeur's license theretofore issued to him and valid at the time of his arrest."

For further light, read in this connection section 366(4) of the same title, defining the powers and duties of the Commissioners of Public Safety, subordinate officers and members of Division of Highway Patrol, which reads, in part:

"When on duty, *upon reasonable belief* that any vehicle is being operated in violation of any provision of this Act, or any other law regulating the operation of vehicles, to require the driver thereof to stop and exhibit his driver's license * * *." (Emphasis supplied.)

Section 303 of the title makes it a misdemeanor for a person to operate a motor vehicle upon the public highways without first having obtained a driver's license, with certain specified exceptions, and also makes it a misdemeanor for a person during the time for which the license of said person as an operator was denied, cancelled, suspended or revoked to operate a motor vehicle.

By provision of 74 O.S.1951 § 149, members of the State Highway Patrol have and exercised all the powers and authority of other peace officers, excluding service of civil process.

From 47 O.S.1951 § 285, while it is provided that a driver must display his driver's license upon demand of "a peace officer", the circumstance that would justify a peace officer in demanding to see a driver's license is not spelled out. And while section 366(4) of the title does not specify "any" peace officer, but specifically refers only to the commissioner of public safety, and subordinate officers and highway patrolmen, the subject of the various sections are in pari materia, and in all good reason we must assume that peace officers in general would have no less restrictions than highway patrolmen, in their demands to see the license of the driver of a motor vehicle, particularly when the vehicle was in motion and there was no justification in stopping the same other than to examine the license of the driver. In other words, under such circumstances no peace officer could be justified in stopping a motor vehicle and demanding to examine a driver's license except "upon reasonable belief" that the vehicle "is being operated in violation of any provision of the [motor vehicle] Act [47 O.S.A.] or any other law regulating the operation of vehicles", except perhaps where a road block has been established for wholesale checking.

Upon "reasonable belief" is synonymous with upon "probable cause". See Words and Phrases, and Black's Law Dictionary for definitions.

We have seen from the evidence summarized herein that officer Bliss testified to his knowledge of the prosecution of the defendant a few months prior to November 15, 1956 for operating an automobile without a driver's license, and also on a whiskey charge, which supported his then belief that defendant when he saw him emerging from the Dave Massey home, did not have a driver's license and justified him following defendant, if he did drive an automobile, and asking to see his driver's license. Should it have developed that by some means the defendant had been successful in having his driver's license re-issued, or reinstated, and he had displayed an authentic and current license, then officer Bliss would have had no right to search the automobile, but would have been compelled to permit defendant to proceed, unless there had been contraband in plain sight in said automobile, or unless defendant had committed some other crime in the presence of the officers. But defendant in fact did not possess a license, and said to officer Bliss, "You know, Bill, I do not have any." So from the mouth of the defendant we learn that he in fact did not possess a license

and was aware that officer Bliss knew that he did not have one, and eliminated all doubt of the question of whether officer Bliss stopped defendant upon reasonable belief that defendant did not possess a driver's license. Defendant was arrested for driving without a driver's license. The arrest thus was for a misdemeanor committed in the presence of the officers, which, of course, authorized arrest and justified the search of the automobile as incidental to the arrest. 22 O.S.1951 § 196(1).[1]

It follows from the above that the contention of the defendant that the stopping of defendant's car to examine his driver's license was a subterfuge for the search of his car is refuted by the evidence, and the many cases cited involving subterfuge are not applicable, and we must conclude that the trial court was justified in overruling the motion to suppress. Mitchell v. State, supra; Griffin v. State, supra.

On trial in the district court the State called officers Pruitt and Bliss, who testified substantially as in the court of common pleas on motion to suppress. But in order to prove jurisdiction of the district court the burden was on the State to show a prior conviction of the defendant of the violation of the liquor laws, the allegation in the information being "That said defendant, to-wit: on the 9th day of May, 1955, was convicted of the crime of unlawful possession of intoxicating liquor, second and subsequent offense, in the district court of Tulsa County, Oklahoma, and was sentenced to pay a fine of $500 and serve a term of 30 days in the county jail by Honorable Judge Eben L. Taylor, case being 16248 * *."

Officer Bliss identified the defendant as being the Martin Edwards who was con-victed in the district court of Tulsa County on May 1, 1955 of the previous liquor law violation alleged. Also, Clyde Winterringer, deputy court clerk of Tulsa County, identified the information and judgment and sentence in State v. Edwards, 16248 from the district court of Tulsa County, showing the previous conviction in that court of Martin Edwards on a charge of unlawful possession of intoxicating liquor, second and subsequent offense.

On cross-examination of officer Bliss, as to his reason for asking the defendant to display his driver's license, the following developed:

"By Mr. Malloy:

"Q. Now, officer Bliss, I believe you stated one of the reasons why you started after Martin Edwards or started pursuing him was because you knew he did not have a driver's license, is that right? A. That was my information, yes, sir.

"Q. Is it not a matter of fact that Martin Edwards had plead guilty some months before to not having a driver's license? A. Yes, sir.

"Q. And you had known that he had plead guilty at that time? A. Yes, sir."

Of course the charge of driving without a driver's license being a misdemeanor, the district court would not have jurisdiction, and on motion to suppress it, had been developed that this conviction was in the court of common pleas.

In addition to the above, there was some evidence of defendant having his driver's license revoked in 1951 or 1952. The revocation forming the basis of the common pleas court conviction was never developed.

---

1. On the subject of arrest without a warrant generally, see Smith v. State, 52 Okl.Cr. 315, 4 P.2d 1076; Anneler v. State, 93 Okl.Cr. 437, 229 P.2d 238; Robedeaux v. State, 94 Okl.Cr. 171, 232 P.2d 642; Leach v. State, 94 Okl.Cr. 334, 235 P.2d 968; Brinegar v. State, 97 Okl.Cr. 299, 262 P.2d 464; Article in Okl.Law Review of May, 1954, Vol. 7, No. 2, entitled: "Arrest Without a Warrant" by John E. Wagner, Esq.; also article in Okl.Law Review of February, 1956, Vol. 9, No. 1, entitled: "Some Aspects of Search and Seizure", by John C. Powell.

Counsel for the defendant brought out from cross-examination of officer Bliss that he did not know whether defendant drove the Ford up to the Massey house or not, and at the time, whether the car belonged to Edwards or not, and that as a matter of fact, after the arrest he had checked the license registration and found out that it was not listed to defendant. Bliss was asked: "In other words, what I am getting at in your investigation it would be your testimony that at the time—and I am directing your attention to November 15, 1956—this automobile was not Martin Edwards' car? A. No, sir."

■ This was not proper cross-examination, because even if the automobile was not owned by the defendant, he had possession and a proprietary interest sufficient to protect him from an unlawful search. Ellsworth v. State, Okl.Cr., 295 P.2d 296. While there was no evidence on motion to suppress or claim by opening statement that defendant's defense was that he did not own the Ford car and was unaware that it contained liquor, it is apparent from such examination that defendant would interpose such defense.

Officer Bliss, on re-direct examination, testified that when he found the lug of whiskey that the defendant made the remark that he had made eight or ten dollars on the lug that had slipped by on the last place he had been. That such remark was made, was corroborated by officer Pruitt.

The defendant demurred to the State's evidence, which demurrer was overruled by the court, whereupon the renewed motion to suppress was overruled.

■ The court did not err in overruling the demurrer, by reason of the testimony set out, and did not err in overruling the motion to suppress, by reason of what has already been pointed out.

The defendant testified. He said that on November 15, 1956 he and his son were operating a gas service station known as the Rockford Truck Stop; that he got a call to get a motor vehicle for servicing and went out to Thirty-first Street and Joplin for the car; that it was a 1953 Ford car with a Cadillac engine; that he left his own 1957 Ford at the address and got in the 1953 Ford and drove off, stopping by the Massey home, and that Massey was a whiskey dealer. He admitted that his customer Griffin was a known bootlegger, but he denied that he knew that there was any whiskey in the 1953 car until officer Bliss got the lug from under the front seat. He said that after his arrest the officers took him by his service station and left the Griffin car, which his help subsequently serviced.

On cross-examination defendant said that he had been convicted in both the municipal court of Tulsa, the court of common pleas, and the district court, under the prohibition liquor laws of Oklahoma, but could not remember the number of times, over the years, but that he had been convicted "quite a few times."

Defendant's demurrer on the ground of insufficiency of the evidence was overruled, and properly so, there being evidence to support the charge. Ryan v. State, 97 Okl. Cr. 119, 258 P.2d 1208.

The State argues that because the defendant interposed as a defense to the charge that the automobile he was driving at the time of his arrest did not belong to him, and that the whiskey found in it did not belong to him, and that he had no knowledge of it being in the vehicle, that such defense waived any question as to the legality of the search. Citing Reece v. State, 97 Okl.Cr. 115, 259 P.2d 336; Trent v. State, 95 Okl.Cr. 225, 242 P.2d 470; and Kizer v. State, 96 Okl.Cr. 92, 249 P.2d 132.

It will be noted that the defendant did not interpose the claim of non-ownership of the automobile and the whiskey as a ground for suppressing the evidence, but it was on trial that he interposed such contentions as a defense to the charge. But at the same time he claimed lawful control, which amounted to a proprietary interest; that is to say, he had permission from the owner to drive the car to his service station for servicing. His ground

for the motion to suppress the evidence had been that the officers did not know that he did not have a driver's license, and that this reason had been used as a subterfuge for search. A reading of the cases cited by the State, and the case of Ellsworth v. State, Okl.Cr., 295 P.2d 296 will make clear the distinction of interposing denial of ownership of an automobile and contraband contents at time of alleged unlawful search and as ground in support of motion to suppress, and when such would be used as a defense in the trial of the case.

In the within case there was no waiver of the right of the defendant to object to an unlawful search, if the facts had shown an unlawful search.

██ Under his second proposition defendant asserts that the trial court committed reversible error in refusing to strike the case from the jury docket. This assertion is based on the fact that on voir dire examination most of the jurors admitted that they had prior thereto read newspapers wherein the defendant had been referred to as being in the whiskey business. The court dictated the following into the record:

"Let the record show that on the voir dire examination all of the jurors stated that although they did have knowledge from the newspapers that the defendant was in the bootlegging business that all of the jurors stated that they could disregard any information which they had learned from the newspapers and try this case on the merits without regard to any information they had read in the newspapers.' Your motion is overruled."

The court further stated that he did not remember any juror on voir dire examination indicating that he knew anything about the particular case up for trial.

We note in defendant's testimony that he indicated that he had been convicted so many times for violation of the prohibitory liquor laws that he could not remember the times, but thought he had served four or five jail terms. Naturally, his brushes with the law would be published in the news-papers of the county. If he could escape trial because prospective jurors or jurors selected had read about his conduct, then the more publicity a law violator could get the greater his chances would be of never having to answer for his crimes. We reject the contention that the court erred in its ruling.

It is finally argued that the judgment entered is too severe.

██ We note that the five short jail sentences served by defendant have not been sufficient to act as a deterrent, and neither the previous light fines. The purpose of punishment is not for punishment's sake, as it is most always tragic where there are innocent persons to be affected, and it is always the tax-payer who foots the bills when incarceration is involved. The object is to compel persons to obey the law. Where officers do not perform their duties and enforce the law, violators come to have contempt of the law. The court could have assessed punishment at imprisonment for five years, and a fine of two thousand dollars. Therefore, the penalty of a fine of one thousand dollars and imprisonment of one year, in view of persistent violations of the prohibitory liquor laws, is not excessive. The record could not possibly justify interference with the judgment rendered. The court was lenient in the punishment assessed.

Judgment affirmed.

BRETT, P. J., concurs.

### On Petition for Rehearing

POWELL, Judge.

Counsel for defendant vigorously contends that this court did not give due consideration to the cases of Branson v. State, Okl.Cr., 270 P.2d 362, and Ellsworth v. State, Okl.Cr., 295 P.2d 296, cited by defendant. It is argued:

"In support of the opinion that the cases involving subterfuge were not applicable, the court appears to take at face value the testimony of officer Bliss to the effect that the reasons

for following Edwards and stopping him was to arrest him for not having a driver's license. Surely, this court is too familiar with this type of case to 'buy' this ridiculous version of what actually prompted the arrest and search. Under the record it is crystal clear that Bliss followed, stopped and searched Edwards' car because he thought the car might contain whiskey."

After referring to the Branson and Ellsworth cases, it is further argued:

"The subterfuge in the instant case is far more apparent. Bliss, a trained member of the raiding squad with some knowledge of the decisions of this Court, attempted to justify an illegal search by denying in his testimony that he stopped Edwards with no suspicion that Edwards had whiskey in the car. That is patently ridiculous. the shocking thing is that this Court would attach any credence to such testimony. It was made with 'tongue in cheek', as prosecutor, trial judge, and defense counsel well know, and which, most certainly, this Court should readily appreciate."

In Branson v. State, supra, officers observed defendant driving by and followed him, as they said, for observation. Witness was asked, "Did you observe anything unusual about his manner of driving as you followed him? A. When he turned north into Earlsboro was the first thing I noticed about his driving. That is a four-lane highway there with a small island down the center, and he turned out into the center lane, which would be the wrong lane of traffic, so when he went north we followed him up town." And as stated in that case: "The officers followed the defendant to a point on a little used dead end street in front of the Spencer home, at the end of the street. The officers followed him into the house and told him to come outside. They then took custody of the defendant on mere suspicion, and started a search."

The arresting officer admitted that they did not arrest Branson for the claimed minor traffic violation. But witness said: *"We placed him under arrest and searched his car. We wanted to look in his car and see what was in it."*

In Brinegar v. State, 97 Okl.Cr. 299, 262 P.2d 464, we had held that ordinarily a minor traffic violation would not support a search and seizure. We did say that the officers would, after arrest for a traffic violation, have the right to search the person of the accused and his immediate surroundings for firearms or other weapons for the protection of the arresting officers and to prevent escape. And there liquor being found in a place convenient for firearms, we held that the officers had the further right to search the turtle back of the car for further evidence to support the charge to be filed of illegal transportation. So that in the Branson case we said:

"Whether a search of or seizure from an automobile, parked on a public street, without a warrant, is or is not unreasonable within the meaning of the constitutional provision forbidding unreasonable searches and seizures, is a judicial question to be determined in each case in view of all the facts and circumstances under which the search or seizure is made.

"A search of an automobile without a search warrant and not as an incident of a lawful arrest, and not upon any probable cause of the commission of a felony, but upon a mere suspicion, is in violation of Bill of Rights, § 30, and evidence obtained by such a search is inadmissible. Const. Art. 2, § 30, Okl. St.Ann."

The principles set forth in the Branson case were reiterated in Ellsworth v. State, supra [295 P.2d 297]. Quoting from the body of the opinion, we said:

"The defendant contends that the trial court erred in overruling his motion to suppress. Briefly, the facts disclose that the defendant was driving

along on Highway 66 outside of Vinita, Oklahoma, where the highway turns to the right from west to north. Instead of turning north, he continued straight ahead on a country road which continues west. The Highway Patrol car, driven by Patrolmen Ballard and Rogers, was proceeding south on Highway 66 before the same turns to the east. It appears that at this point, they met the defendant as he went off the highway. They testified he gave no signal of his intention so to do, and they had to slow down to keep from hitting him. Under the rules of the road the defendant proceeding straight ahead was not required to give a signal. 47 O.S. 1951 § 121.5 (Duty to signal). They stated that he was driving 40–45 miles per hour, not an excessive speed, and they proceeded to follow him and placed him under arrest. Ordinarily, a minor traffic violation will not support a search and seizure. Brinegar v. State, 97 Okl.Cr. 299, 262 P.2d 464. The officers admitted there was no other traffic on the highway and they did not advise the defendant of the supposed violation but placed him in jail for investigation. The grounds relied on to support the arrest and subsequent search appear to be a mere subterfuge."

The within case differs materially in the fact situation from the two cases above. Here, officer Bliss had personal knowledge that Edwards' driver's license had been cancelled, so that when Edwards commenced to drive the Ford automobile in the presence of Bliss, Bliss had a right to stop him and to demand to see his driver's license, which Edwards did not have and reminded Bliss that Bliss already knew that he did not possess a driver's license. The initial arrest for driving without a driver's license followed. Bliss knew Edwards was a persistent law violator, and was therefore justified in searching him and his immediate presence for firearms and in the process found the liquor under the front seat of the car.

■■■■ Counsel would have this court reject the interpretation placed by the trial court upon the evidence developed in the within case, and say that officer Bliss was giving false evidence, and in effect say that there was no basis in the evidence to support his claim that he stopped Edwards because he had personal knowledge that Edwards' driver's license had theretofore been cancelled. That is the interpretation the trial court would have been compelled to give the evidence of Bliss in order to have sustained the motion to suppress. He had the witness before him, and was in a better position to evaluate the evidence. He did not feel that the evidence justified him in interpreting it as counsel for the defendant suggests he should. We would not be justified in setting aside the action of the trial court. The rule is that where there is evidence to support the findings of the trial court, the Criminal Court of Appeals will not reverse the lower court upon its findings of fact. See Mitchell v. State, and Griffin v. State, cited in the opinion.

■■■■ Counsel argues that this court by its decision has extended Section 366(4) of Title 47 O.S.A. to authorize any peace officer to stop a moving motor vehicle, instead of the "Commissioner and each officer and inspector of the Department as he shall designate and all members of the Division of Highway Patrol."

Section 285 of the title provides in part: "Every licensee shall have his operator's or chauffeur's license in his immediate possession *at all times when operating a motor vehicle and display the same, upon demand of a peace officer,* or a field deputy or inspector of the Commissioner. * * *" (Emphasis supplied.)

Here, officer Bliss knew that defendant had not long before been convicted of operating a motor vehicle without having a driver's license. He certainly had a right, under such circumstances, to demand that defendant display his license; that is to say, he did the moment defendant commenced to operate a motor vehicle. The vehicle necessarily was in motion and had

to be stopped. Section 366(4) was cited to demonstrate that the Commissioner of Public Safety and specified officers could only stop a vehicle *"upon reasonable belief that any vehicle is being operated in violation of any provision of this Act, or any other law regulating the operation of vehicles. * * *"* In other words, they could not just stop a car on any pretext, but only on the condition specified. Likewise, peace officers in general cannot stop a car on any pretext; say, on the ground that they believe that a driver does not have a driver's license. The belief must have come about by reason of facts within the knowledge of such officer justifying the expressed belief. The demand authorized by Section 285 must result from justifiable facts within the knowledge of the demanding officer. Here, officer Bliss having been in court where defendant was convicted of driving without a driver's license, certainly had without pretext or subterfuge grounds for a reasonable belief that presently defendant did not possess a driver's license, which gave him the right, irrespective of Section 366(4) of the Title, to demand to see defendant's license, and the right when his belief was confirmed by Edwards, to arrest him for driving without a driver's license. The search that followed was, under the circumstances, incidental.

The petition for rehearing and further argument is denied, and the Clerk of this Court is directed to issue the mandate forthwith.

BRETT, P. J., concurs.