William Covert GRAHAM, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–15318.

Court of Criminal Appeals of Oklahoma.

Sept. 27, 1972.

Dissenting Opinion Sept. 28, 1972.

Frank Grayson, Deceased, for appellant.

Larry Derryberry, Atty. Gen., Jeff L. Hartmann, Asst. Atty. Gen., for appellee.

BUSSEY, Presiding Judge:

Appellant, William Covert Graham, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Oklahoma, for the offense of Possession of Marijuana; his punishment was fixed at five (5) years imprisonment and a Five Thousand ($5,000.00) Dollar fine. This cause was reviewed by this Court and an Opinion was rendered on June 30, 1971 ordering the case reversed. A Petition for Rehearing was denied on December 10, 1971. A Second Petition for Rehearing was filed by the State of Oklahoma and upon consideration of such, we are of the opinion that the previous Order entered by this Court reversing the cause should be vacated and held for naught.

The evidence at the trial adduced that about 11:55 p. m. the night of October 14, 1967 the defendant and two other men were observed in a red Mustang automobile traveling east on N.W. Eighth Street in Oklahoma City. They pulled into a parking area, backed out and parked along the north curb facing west in the 400 block of N.W. Eighth.

Officers Maxwell and Schimmels observed the defendant and another man get out of the vehicle. The third man remained in the back seat of the car. The officers approached the vehicle and as they did so, defendant turned around and started walking away. Officer Maxwell testified that he saw defendant appear to place something in his mouth, and shortly thereafter take it out and throw it away upon the ground. Officer Maxwell retrieved the object, which he testified was the cellophane part of a cigarette package which contained two or three hand rolled cigarettes. He testified that based upon his past experience, he was of the opinion that the cigarettes were made of marijuana. He thereupon arrested the defendant for possession of marijuana.

Bryan Tipton, a chemist with the Oklahoma Bureau of Investigation, identified the substance delivered to him for analysis, as being marijuana.

The sole question before this Court concerns the admissibility of the marijuana cigarettes. In the previous opinion rendered by this Court, we held that because defendant's actions were prompted by the fear of an unlawful arrest and subsequent search and seizure his right to privacy was sufficiently invaded by improper police action to cause him to commit the very act for which he was arrested and convicted. We have reconsidered our prior holding and are of the opinion that the evidence of the marijuana cigarettes was properly admitted into evidence. In dealing with a similar question in Ellison v. State, Okl. Cr., 493 P.2d 837, we stated:

"The arresting officers [sic] testimony, as detailed in this opinion, indicates the officer was in a public place where he had a lawful right to be, at which time he observed 'a small white object fall to the ground' from the person of the defendant. It must be emphasized that no search of the person of the defendant was commenced until after the contents of the piece of paper had been examined, which examination gave rise to probable cause to arrest the defendant. It was only after the examination of the piece of paper that the officer affected the arrest and search of the person of the defendant.

"The evidence relied upon by the State for conviction, therefore, was obtained after the defendant had abandoned same upon public premises, and before he was taken into custody.

"Such a fact situation is controlled by Trujillo v. United States, 294 F.2d 583 (10th Cir.1961) which held:

'It is not a search to observe that which occurs openly in a public place and which is fully disclosed to visual observation.'

"Trujillo, supra, was cited with approval in United States v. Von Roeder, 435 F.2d 1004 (10th Cir.1971) which held that a patrolman, whether or not he was authorized to arrest, was not violating the constitutional rights of an accused by retrieving items lying in full view at scene of apprehension, so that seizure of such items and their admission into evidence was not precluded by Fourth Amendment, nor are the circumstances of that type of seizure remotely suggestive of the invasion of privacy in Chimel and similar cases.

"Factually, there was no search here at all."

The judgment and sentence is accordingly affirmed.

SIMMS, J., concurs.

BRETT, Judge (dissenting).

This decision was filed on September 27, 1972, without being submitted to me for consideration prior to its being filed. Insofar as the original decision, filed June 30, 1971, was written by me and reversed the conviction, I am compelled to file this dissent separately.

What the majority opinion leaves out of the factual statement of this case was the basis for the earlier reversal. In that decision Judge Nix concurred and Presiding Judge Bussey did not participate.

On cross-examination, Officer Maxwell was asked by defense counsel, "What was your reason for getting out and going about the automobile?" The officer answered, *"I was curious* as to what they were doing at that particular time of the night." [11:55 P.M] (Emphasis added.) The officer was subsequently asked, "In your presence then, before you got out and made your investigation, there hadn't been any law violated up until that time is that right?" The officer answered "No, sir."

This Court stated in Ellsworth v. State, Okl.Cr., 295 P.2d 296, 298 (1956), the following:

"The search must be justified by the steps that preceded it. Edwards v. State, 83 Okl.Cr. 340, 177 P.2d 143, 147. The partially filled bottle of gin played no part in the arrest, it was discovered after the unlawful arrest based on suspicion. Hence, the search and seizure was not incident to a lawful arrest, or upon probable cause of the commission of a felony, but upon mere suspicion and is a violation of the Bill of Rights, Art. 2, § 30, Oklahoma Constitution. Hoppes v. State, 70 Okl.Cr., 179, 105 P.2d 433; Johnson v. State, 92 Okl.Cr. 63, 220 P.2d 469."

This Court also provided in the fifth paragraph to the Syllabus to Jones v. State, 82 Okl.Cr. 91, 166 P.2d 443 (1946):

"Where an officer, after lawfully stopping or restraining a person, becomes aware that an offense is being committed or is about to be committed in the officer's presence, he may lawfully arrest the offender without a warrant, *but where the officer becomes aware of the facts constituting the offense after making an unlawful arrest, the arrest cannot be justified as being for an offense committed in the officer's 'presence'."* (Emphasis added.) See also: Holland v. State, 93 Okl.Cr. 180, 226 P.2d 448 (1951)

The facts in Trujillo v. United States, supra, referred to by the majority, are distinguishable to the instant case. "Two Albuquerque, New Mexico, police officers, . . . had received information from sources which they knew to be reliable . . . that he [Trujillo] was selling heroin in the Barelas area of Albuquerque." However, in the instant case, the officer "was curious as to what they were doing at that particular time of the night."

In Ellison v. State, supra, from that record one is left to conclude that the offi-

cers drove their police car into the driveway in order to turn the vehicle around, when Ellison was observed to drop the packet of contraband. There was nothing in the record to indicate that THEY WERE SUSPICIOUS, with reference to the defendant's being where he was. In the instant case the record is specifically clear that the officers stopped because they were suspicious.

As I view the record, the conviction was premised on suspicion; and the officers lacked sufficient probable cause to arrest defendant; and therefore, lacking probable cause there was no justification for the police to invade defendant's right of privacy, which prompted the alleged "dropping incident." Therefore, I respectfully dissent to this decision.